[No. B205815. Second Dist., Div. Eight. Dec. 23, 2008.]

REBECCA BOLANOS, a Minor, etc., Petitioner, v.
THE SUPERIOR COURT OF LOS ANGELES COUNTY, Respondent;
STATE DEPARTMENT OF HEALTH CARE SERVICES, Real Party in
Interest.

COUNSEL

Mathews & Weisser and C. Granville-Matthews for Petitioner.

No appearance for Respondent.

Edmund G. Brown, Jr., Attorney General, Douglas M. Press, Assistant Attorney General, Richard T. Waldow and Janet E. Burns, Deputy Attorneys General, for Real Party in Interest.

OPINION

FLIER, J.—

## INTRODUCTION

These proceedings involve amendments enacted in 2007 to statutes that govern claims for reimbursements made by California's State Department of Health Care Services (Department) for funds expended on behalf of injured parties by the state's Medi-Cal program. The background of the Medi-Cal program has been described in *Shewry v. Arnold* (2004) 125 Cal.App.4th 186, 193 [22 Cal.Rptr.3d 488].[1] The amendments in question came in response to *Arkansas Dept. of Health and Human Servs. v. Ahlborn* (2006) 547 U.S. 268 [164 L.Ed.2d 459, 126 S.Ct. 1752] (*Ahlborn*). Because the relevant statutes speak not of the Department but of the Director of the Department of Health Care Services, we will also refer to the director and not the Department.

Prior to *Ahlborn* and the amendments we discuss in this opinion, the director was able to recoup the full amount of the benefits provided, less 25 percent; the deduction represented the director's contribution toward attorney's fees and costs. The director's recovery was also limited to 50 percent of the beneficiary's recovery.

---

[1] " 'Medi*caid* (42 U.S.C. . . . § 1396 et seq. [tit. XIX of the Social Security Act; "Grants to States For Medical Assistance Programs"])' is a federal program that enables states to provide medical assistance to impoverished individuals who are aged, blind, disabled, or families with dependent children. (*Mission Community Hospital v. Kizer* (1993) 13 Cal.App.4th 1683, 1688 [17 Cal.Rptr.2d 303].) ' " 'The program is optional, but once a state decides to participate it must comply with the federal government's requirements, listed at 42 U.S.C. § 1396a.' [Citations.]" ' [(*Mission Community Hospital*, at p. 1688.)] 'The Medi-Cal program is the California implementation of the federal Medicaid program . . . . [The Department] is the state agency charged with administration of the Medi-Cal program.' (*Id.* at p. 1687.) 'As a Medi*caid* program, California's Medi-Cal program must therefore conform to federal Medi*caid* statutes and regulations. [Citation[s].]' (*Id.* at p. 1689.)" (*Shewry v. Arnold, supra*, 125 Cal.App.4th at p. 193.)

■ *Ahlborn* brought two basic changes that are reflected in the 2007 amendments. First, the director is limited to recovering only from payments, whether by settlement, judgment or award, made for medical expenses. Second, when the settlement, judgment or award does not specify what portion thereof was for past medical expenses, an allocation must be made in the settlement, judgment or award that indicates what portion is for past medical expenses as distinct from other damages. The director's recovery is limited to that portion of the settlement that is allocated to past medical expenses. We explain in our opinion why, in a settlement that is not allocated between past medical expenses and other damages, the ratio of the settlement to the total of the claim, when applied to the director's total payments to the beneficiary, is an acceptable approximation of the amount of medical expenses.

We entertained the petition for a writ of mandate because in this case the trial court did not determine the portion of the settlement that was effected in this case that is allocable to medical expenses. The effect of this was to make the entire sum expended by the director recoverable; this does not comply with *Ahlborn* and the amendments to the statutes that implement this decision. We set aside the trial court's order, explain the operation of the amendments enacted in response to *Ahlborn*, and direct the trial court to undertake further proceedings consistent with this opinion.

We begin by stating the facts that underlie the petition for the writ of mandate.

## FACTS

In June 2006, then four-year-old Rebecca Bolanos, by and through her guardian ad litem, Bertha Gallegos, filed a medical malpractice complaint against a number of health care providers. Bolanos sought both special and general damages. The complaint contained no details of the alleged malpractice, but according to the motion that is the subject of this writ proceeding, Bolanos is in an irreversible coma and requires life support and nursing care around the clock.

The director paid $746,017[2] for the medical care and treatment that Bolanos required as a result of the alleged malpractice. In February 2007, the director advised Bolanos's counsel in writing that she was placing a lien on any recovery Bolanos obtained in her malpractice action.

---

[2] Cents are omitted throughout the opinion.

In October 2007, Bolanos and the malpractice defendants agreed to settle for a total of $1.5 million. Ultimately, the director advised Bolanos's counsel that the amount of the lien was $546,651.

The difference between what the director actually spent ($746,017) and the lien that she claimed ($546,651) introduces the first of several statutes that apply to this case. This is Welfare and Institutions Code section 14124.72.[3] Subdivision (d) of this provision requires the director to deduct 25 percent from the amount claimed. According to the statute, this represents the "director's reasonable share of attorney's fees paid by the beneficiary and that portion of the cost of litigation expenses determined by multiplying by the ratio of the full amount of the reasonable value of benefits so provided to the full amount of the judgment, award, or settlement." (§ 14124.72, subd. (d).)[4]

We digress at this point to set forth part of the statutory framework that was enacted in response to *Ahlborn*, because it explains what Bolanos's counsel did after learning of the director's claim of a lien of $546,651.

We set forth the relevant provision below.[5] Because there was no agreement, in advance "as to what portion of a settlement, judgment, or award that represents payment for medical expenses, or medical care, provided on behalf of the beneficiary," the statute goes on to state that "the matter shall be submitted to a court for decision. Either the director or the beneficiary may

---

[3] All further statutory references are to the Welfare and Institutions Code, unless otherwise noted.

[4] The $546,651 amount reflects not only a 25 percent reduction for attorney's fees ($186,504), but a further reduction of $12,861 as the director's share of litigation costs.

[5] "No settlement, judgment, or award in any action or claim by a beneficiary to recover damages for injuries, where the director has an interest, shall be deemed final or satisfied without first giving the director notice and a reasonable opportunity to perfect and to satisfy the director's lien. Recovery of the director's lien from an injured beneficiary's action or claim is limited to that portion of a settlement, judgment, or award that represents payment for medical expenses, or medical care, provided on behalf of the beneficiary. All reasonable efforts shall be made to obtain the director's advance agreement to a determination as to what portion of a settlement, judgment, or award that represents payment for medical expenses, or medical care, provided [on] behalf [of] the beneficiary. Absent the director's advance agreement as to what portion of a settlement, judgment, or award represents payment for medical expenses, or medical care, provided on behalf of the beneficiary, the matter shall be submitted to a court for decision. Either the director or the beneficiary may seek resolution of the dispute by filing a motion, which shall be subject to regular law and motion procedures. In determining what portion of a settlement, judgment, or award represents payment for medical expenses, or medical care, provided on behalf of the beneficiary and as to what the appropriate reimbursement amount to the director should be, the court shall be guided by the United States Supreme Court decision[ in *Arkansas Department of Health and Human Services v. Ahlborn*[, *supra*,] 547 U.S. 268 and other relevant statutory and case law." (§ 14124.76, subd. (a), italics added.)

seek resolution of the dispute by filing a motion, which shall be subject to regular law and motion procedures." (§ 14124.76, subd. (a).)

Counsel for Bolanos proceeded to file the motion envisaged in subdivision (a) of section 14124.76. This was done after the effective date of the *Ahlborn* amendments, which is August 24, 2007. We defer a discussion of the substance of this motion to the Discussion part of this opinion, save to note that in essence the motion attempted to follow and apply *Ahlborn*.

The director opposed the motion. Although the director's opposition cited *Ahlborn*, the director took the position that the total amount of Bolanos's damages was "not relevant" and that the entire $1.5 million settlement was subject to her claim for reimbursement. According to the director, the court was required only to apply the 25 percent reduction formula in section 14124.72, subdivision (d). The director explained that, under this formula, the director was entitled to recover approximately $548,000 from the settlement proceeds.

The trial court heard the matter in mid-December 2007. It took the matter under submission, and issued a decision approximately one week later denying the motion.[6]

The trial court took note of *Ahlborn*, but it interpreted this decision to be limited to the holding that the state could not recover Medicaid benefits that were not attributable to medical expenses. While this is correct as far as it goes, it is also true that *Ahlborn* went on to reject the contention that the entire settlement was subject to the state's claim for reimbursement, holding that "the State's assigned rights extend only to recovery of payments for medical care." (*Ahlborn, supra*, 547 U.S. at p. 282.) As we discuss below, this requires a determination of what portion of the settlement is attributable to medical expenses. The trial court did not take account of this further aspect of *Ahlborn*; in essence, we granted the petition to correct this error.

Bolanos moved for reconsideration based primarily on a number of post-*Ahlborn* trial court decisions from New York State that applied a proportionate reduction methodology like the one proposed by Bolanos. The

---

[6] In a parallel ruling, the court also denied the petition to approve the settlement, albeit without prejudice to refiling (presumably after the proper Medi-Cal lien amount was established).

trial court granted the motion, but it reaffirmed its original decision. Bolanos then petitioned this court for a writ of mandate.[7]

## PROCEEDINGS IN THIS COURT

Initially, we advised the parties of our intention to issue a peremptory writ in the first instance (*Palma v. U.S. Industrial Fasteners, Inc.* (1984) 36 Cal.3d 171 [203 Cal.Rptr. 626, 681 P.2d 893]; *Ng v. Superior Court* (1992) 4 Cal.4th 29, 35 [13 Cal.Rptr.2d 856, 840 P.2d 961]), and invited the director to file an opposition to the petition. In the opposition we received, the director advanced essentially the same arguments she had raised before the trial court.

After receiving the director's opposition and a reply from Bolanos, we issued an order to show cause to provide the parties with an opportunity to present oral argument. We also advised the parties they could supplement their briefing if they wished to do so.

The director filed a supplemental brief, raising two arguments. First, the director claims his position is supported by two recent decisions by different divisions of this appellate district. (*Espericueta v. Shewry* (2008) 164 Cal.App.4th 615 [79 Cal.Rptr.3d 517] (*Espericueta*); *McMillian v. Stroud* (2008) 166 Cal.App.4th 692 [83 Cal.Rptr.3d 261] (*McMillian*).) We discuss those decisions below.

Second, the director claims the order to show cause should be discharged because, after we issued our order advising the parties of our intention to issue a peremptory writ in the first instance, Bolanos conceded the director is entitled to recover approximately $548,000 on her lien.

The facts do not support the latter claim. Bolanos submitted a new petition to approve the settlement, which the court approved. (See fn. 6, *ante*.) It is true that the new petition to approve the settlement states that Bolanos incurred $746,017 in medical expenses, the amount paid by the Department, and that approximately $546,651 from the settlement proceeds will be paid to the Department pursuant to its lien. Other documents, however, reveal that

---

[7] Concurrently, Bolanos appealed from the trial court's order. (See § 14124.76, subd. (b) ["either the beneficiary or the director may appeal the final findings, decision, or order" on a motion seeking a judicial determination of the amount the Department may recover on a lien].) To expedite resolution of this matter involving disbursement of settlement proceeds to a severely injured child, we elected to consider the matter by way of this writ proceeding.

Bolanos and the director agreed to place the disputed sum in a blocked account, pending the outcome of these writ proceedings, a procedure the trial court recognized and approved.

## DISCUSSION

1. Ahlborn *and the Determination of the Amount of Medical Expenses in a Settlement That Is Not Allocated Between Medical and Nonmedical Damages*

a. Ahlborn

In *Ahlborn*, the Arkansas Department of Health and Human Services (hereafter ADHS) had paid $215,645 in benefits after the beneficiary was injured in a car accident. The beneficiary sued two third parties, seeking damages for past medical costs, as well as for, among other things, future medical costs, pain and suffering, and lost earnings. (*Ahlborn, supra*, 547 U.S. at pp. 272–273.)

The case settled for $550,000. (*Ahlborn, supra*, 547 U.S. at p. 274.) The settlement was not allocated between the various categories of damages. ADHS claimed that it was entitled to the entire sum of $215,645 it had expended, while the beneficiary contended that ADHS was entitled only to that portion of the settlement that was attributable to medical expenses. Thus, the principal issue in the case was the same as in the case before us, i.e., whether the settlement has to be allocated between past medical expenses and other expenses or damages.

In order to facilitate the resolution of the questions presented, the parties stipulated in the district court that (1) the beneficiary's entire claim was reasonably valued at $3,040,708; (2) the $550,000 settlement amounted to approximately one-sixth of that amount; and (3) if the beneficiary's construction of the applicable federal law was correct, ADHS was entitled to recover only $35,581, i.e., only approximately one-sixth of the benefits provided ($215,645). (*Ahlborn, supra*, 547 U.S. at p. 274.)

*Ahlborn* has three aspects to it. First, the state is entitled only to that portion of the settlement that compensates for past medical expenses.[8]

---

[8] "We must decide whether ADHS can lay claim to more than the portion of Ahlborn's settlement that represents medical expenses. The text of the federal third-party liability provisions suggests not; it focuses on recovery of payments for medical care. Medicaid recipients must, as a condition of eligibility, 'assign the State any rights . . . *to payment for medical care* from any third party,' 42 U.S.C. § 1396k(a)(1)(A) (emphasis added), not rights to payment for, for example, lost wages." (*Ahlborn, supra*, 547 U.S. at p. 280, fn. omitted.) The

Second, this means that the state is not automatically entitled to the entire settlement, even if the claim for reimbursement exceeds the settlement: "Finally, ADHS points to the provision requiring that, where the State actively pursues recovery from the third party, Medicaid be reimbursed fully from 'any amount collected by the State under an assignment' before 'the remainder of such amount collected' is remitted to the recipient. § 1396k(b). In ADHS' view, this shows that the State must be paid in full from any settlement. . . . But, even assuming the provision applies in cases where the State does not actively participate in the litigation, ADHS' conclusion rests on a false premise: The 'amount recovered . . . under an assignment' is *not*, as ADHS assumes, the *entire settlement*; as explained above, under the federal statute the State's assigned rights extend only to recovery of payments for medical care." (*Ahlborn, supra*, 547 U.S. at pp. 281–282, italics added, citation omitted.)

The fundamental point is that a settlement that does not distinguish between past medical expenses and other damages must be allocated between these two classes of recoveries. Without such an allocation, the principle set forth in *Ahlborn*, that the state cannot recover for anything other than past medical expenses, cannot be carried into effect. In *Ahlborn*, ADHS conceded that if a jury or a judge had allocated a specific sum for medical expenses, ADHS "would be entitled to reimburse itself only from the portion so allocated." (*Ahlborn, supra*, 547 U.S. at p. 282, fn. 12.) The court went on to find: "Given the stipulation between ADHS and Ahlborn, there is no textual basis for treating the settlement here differently from a judge-allocated settlement or even a jury award; all such awards typically establish a third party's 'liability' for both 'payment for medical care' and other heads of damages." (*Ibid.*) In other words, an allocation between past medical and other expenses or damages may be made by the judgment itself. If there is no such allocation, as in a settlement, the parties must attempt to allocate; if they cannot agree, they must turn to the court. (See pp. 755–756, *post*, citing § 14124.76, subd. (a).)

Third, we come now to the aspect of *Ahlborn* that addresses how to allocate medical and nonmedical damages in an otherwise unallocated settlement. We have already set forth how the parties went about this task in *Ahlborn*; the ratio of the settlement to the total claim, when applied to the benefits provided by ADHS, yielded $35,581.[9] (See p. 752, *ante*.) One very direct indication of the court's approval of the approach followed by the

court rejected ADHS's contention, based on Arkansas statutes, that ADHS could recover the full amount it had spent on the beneficiary; the court held that ADHS could recover only what it had spent for medical expenses. (*Id.* at pp. 278–279.)

[9] As we discuss below, this stipulated sum included in all probability ADHS's share of litigation expenses.

parties in *Ahlborn* is the court's unequivocal conclusion that ADHS was entitled to no more than $35,581. (*Ahlborn, supra*, 547 U.S. at p. 292.)

In cases where the injuries have run, for the most part, their economic course by the time the settlement is reached, the approach followed in *Ahlborn* produces a workable approximation. A hypothetical will illustrate why, in many cases, the ratio between the settlement and the total of the claim is a workable approach to the problem of allocating a settlement.

We begin with the observation that, in settlement discussions, past medical expenses are usually the "hard" figures of a medical case, when compared to future losses or pain and suffering, to name two examples. Thus, *on the average*, the settlement will be influenced most directly by the amount of past medical expenses. Assume a total claim of $100,000. If the case settles for $80,000, it is likely that medical expenses were relatively high. If the case settles for $20,000, it signals that medical expenses were relatively low. Assume Medi-Cal expenditures of $50,000. The $80,000 settlement will produce $40,000 for the director, and the $20,000 settlement will yield $10,000. This is fair because, with an $80,000 settlement, it is likely that past medical expenses were a larger component of the settlement than if the settlement had been for $20,000. (The adversarial process of the settlement negotiations may be thought to produce a realistic figure of actual medical expenses.)

While it is perfectly correct to speak of the ratio of the settlement to the total claim, it may be both easier and more accurate to determine what percentage the settlement is of the total claim, and then to apply that percentage to the sum paid by the director to the beneficiary. Thus, taking the facts of *Ahlborn*, $550,000 is 18.08 percent of $3,040,708; 18.08 percent of $215,645 is $38,988. (The difference between the latter sum and the stipulated amount of $35,581 is, in all likelihood, the proportionate share of litigation costs to be borne by ADHS.)

This is not to say that the *Ahlborn* formula is the only one to be followed; there is nothing in that decision that compels this. What matters is that past medical expenses are distinguished in the settlement from other damages on the basis of a rational approach; it may be that the parties can reach an agreement without recourse to the *Ahlborn* formula. In fact, subdivision (a) of section 14124.76 urges the parties to do so. (See p. 755, *post.*)

It is true that there are cases when the assumption of the *Ahlborn* formula may not apply, i.e., the settlement may not be driven primarily by past medical expenses. Such cases are those involving catastrophic injuries to children, where the cost of future medical care, perhaps extending over a lifetime, is the largest factor in the settlement. An illustration of this is *McMillian*, when the minor's attorney stated during the hearing on the attempted reduction of the Medi-Cal lien that the least significant component of the settlement was past medical expenses because this case involved lifetime medical care of a severely compromised child. (*McMillian, supra,* 166 Cal.App.4th at p. 703.) Yet, even in these cases it may be that, with some adjustments, the formula used in *Ahlborn* produces a reliable approximation. Certainly, one cannot take lightly the fact that the Supreme Court, expounding federal law governing a federal program, concluded that the formula devised by the parties in *Ahlborn* produced a reliable result. This is all the more true in our state, as the Legislature expressly directs the parties and the court to apply *Ahlborn* to determine what *portion* of a settlement represents payments for medical expenses. (§ 14124.76, subd. (a).)

While the parties are responsible for arriving at a rational and tolerably accurate allocation between past medical expenses and other damages in a settlement, in the final analysis it is the trial court's responsibility to ensure that this is done.

b. *The 2007 Amendments Regarding Medical Costs and the Allocation of Such Costs*

Subdivision (a) of section 14124.76 incorporates all of the aspects of *Ahlborn* that we have discussed and it provides for the procedures that implement *Ahlborn*.

First. Section 14124.76, subdivision (a) limits the director's recovery "to that portion of a settlement, judgment, or award that represents payment for medical expenses, or medical care, provided on behalf of the beneficiary."

Second. All reasonable efforts are to be made to obtain the director's advance agreement "as to what portion of a settlement, judgment, or award that represents payment for medical expenses, or medical care, provided [on] behalf [of] the beneficiary." (§ 14124.76, subd. (a).) If there is no agreement, "the matter shall be submitted to a court for decision. Either the director or the beneficiary may seek resolution of the dispute by filing a motion, which shall be subject to regular law and motion procedures." (*Ibid.*)

Third. "In determining what portion of a settlement, judgment, or award represents payment for medical expenses, or medical care, provided on behalf of the beneficiary and as to what the appropriate reimbursement amount to the director should be, the court shall be guided by the United States Supreme Court decision in *Arkansas Department of Health and Human Services v. Ahlborn*[, *supra*,] 547 U.S. 268 and other relevant statutory and case law." (§ 14124.76, subd. (a), italics added.)

By filing her motion, Bolanos proceeded as required by section 14124.76. It is quite clear that this provision requires the trial court to determine the amount in the director's claim for reimbursement that is attributable to medical expenses.

We note that this case addresses a settlement and not a judgment. A judgment will require a different approach, since in many (but not necessarily all) cases a judgment will be predicated on special verdicts that reflect jury determinations about the actual value of past medical expenses.

### 2. *The Balance of the* Ahlborn *Amendments*

The question is to what extent the remaining *Ahlborn* amendments are germane to the case before us. In addressing this question, we have in mind the basic circumstances of this case. They are: (1) the director has expended $746,017; (2) Bolanos's total claim may be $6 million or as much as $11.4 million, depending on life expectancy;[10] and (3) the case settled for $1.5 million.

■ Section 14124.72 has not been amended following the *Ahlborn* decision. Thus, under subdivision (d) of section 14124.72, the director may still recover the "reasonable value of benefits provided to the beneficiary under the Medi-Cal program less 25 percent."[11] The question is whether the recoverable "benefits" are limited to those expended for medical care and services.

---

[10] We address the discrepancy between these two figures in part 3. of the Discussion, at page 757, *post.*

[11] "Where the action or claim is brought by the beneficiary alone and the beneficiary incurs a personal liability to pay attorney's fees and costs of litigation, the director's claim for reimbursement of the benefits provided to the beneficiary shall be limited to the reasonable value of benefits provided to the beneficiary under the Medi-Cal program less 25 percent which represents the director's reasonable share of attorney's fees paid by the beneficiary and that portion of the cost of litigation expenses determined by multiplying by the ratio of the full amount of the reasonable value of benefits so provided to the full amount of the judgment, award, or settlement." (§ 14124.72, subd. (d).)

■ There are two reasons why the answer to this question is yes. First, and most important, is that as a Medicaid participant, California must comply with federal law (42 U.S.C. § 1396a; *Shewry v. Arnold, supra,* 125 Cal.App.4th at pp. 193–194), which, as unambiguously expressed in *Ahlborn,* is that recovery is limited to medical expenses. ■ Second, sections 14124.72 and 14124.76 share the same legislative purpose and are in pari materia with each other. Accordingly, they should be interpreted consistently (*American Airlines, Inc. v. County of San Mateo* (1996) 12 Cal.4th 1110, 1129 [51 Cal.Rptr.2d 251, 912 P.2d 1198]) in order to achieve a uniform and consistent legislative purpose (*Fidelity Creditor Service, Inc. v. Browne* (2001) 89 Cal.App.4th 195, 200 [106 Cal.Rptr.2d 854]) in the context of the entire statutory scheme. Thus, under section 14124.72, the director may recover only expenses for medical care and services.

Section 14124.78 was amended to delete therefrom the limitation that the director's claim could not exceed one-half of the beneficiary's recovery.[12] Thus, in its current form, section 14124.78 imposes a single, absolute limitation on the director's recovery that precludes the reimbursement of medical expenses from the beneficiary's own resources. This section will not play a role in this case because all of the director's outlay is less than the entire settlement.

Finally, there is section 14124.785, which was added in 2007: "The director's recovery is limited to the amount derived from applying Section 14124.72, 14124.76, or 14124.78, whichever is less." (Stats. 2007, ch. 188, § 73.) This provision makes it likely that in most cases, as in this one, the operative statute will be section 14124.76.

## 3. *The Court Must Determine the Total Amount of Bolanos's Claim*

We note that Bolanos asserted that the total value of the claim was either $6 million or $11.4 million, depending on whether life expectancy was 10 or 30 years.

■ It is not possible to determine the total amount of the claim without also determining life expectancy. And, of course, it is not possible to arrive at the amount that the director can recover without comparing the director's

---

[12] Section 14124.78, as amended, provides: "Notwithstanding any other provision of law, in no event shall the director recover more than the beneficiary recovers after deducting, from the settlement judgment, or award, attorney's fees and litigation costs paid for by the beneficiary. If the director's recovery is determined under this section, the reductions in subdivision (d) of Section 14124.72 shall not apply." (See Stats. 2007, ch. 188, § 72.)

actual outlay to the total of the claim. Thus, absent an agreement between Bolanos and the director, the trial court must determine, for the purpose of determining the amount to which the director is entitled, Bolanos's life expectancy. This determination is one of fact, and it must be made on the basis of expert testimony.[13]

4. Espericueta *and* McMillian *Do Not Apply to This Case*

Principally, the aforesaid cases are distinguishable because they involve attempts to modify final orders approving settlements; in both instances, these belated attempts were based on *Ahlborn*.

In *Espericueta, supra,* 164 Cal.App.4th 615, a Medi-Cal beneficiary petitioned the trial court to approve her $3.6 million settlement with a third party tortfeasor. Although the beneficiary submitted her petition four months after the *Ahlborn* decision, she relied solely on the 25 percent reduction formula in section 14124.72, subdivision (d), when stating in the petition that the Department would receive approximately $239,474 of the settlement proceeds to satisfy its lien. The trial court approved the settlement as proposed on the same day it was filed, i.e., on September 22, 2006.[14] (*Espericueta*, at pp. 618–620, 627.) On March 20, 2007, the beneficiary filed a motion to extinguish or strike the Department's lien to the extent it exceeded approximately $32,856.[15] (*Id.* at pp. 620–621.)

Understandably, the decision of the court in *Espericueta* is predicated on the finality of decisions and not on *Ahlborn*. Although *Ahlborn* had been decided nearly five months before the petition to approve the minor's compromise was filed *and decided by the trial court*, the beneficiary sought to undo that decision six months after that decision had been made.[16] And it was not only the lapse of time that concerned the *Espericueta* court. As part of the *Ahlborn* calculations (see fn. 15, *ante*), the beneficiary for the first time contended that the value of the claim was over $26 million. "[W]e are at a loss to understand how a court can make an accurate liability analysis and

---

[13] On occasion, trial courts must address the identical issue when setting a schedule for the payment of future damages in a medical malpractice case under Code of Civil Procedure section 667.7.

[14] *Ahlborn* was decided on May 1, 2006.

[15] The beneficiary calculated the total claim to be $26,232,480; the settlement was $3.6 million or 13.72 percent of the total claim. Taking 13.72 percent of the lien of $341,885, less a further reduction for attorney's fees and costs, brought the allowable amount to $32,856. This followed the *Ahlborn* approach.

[16] "We note that the decision in *Ahlborn* was issued four months prior to the submission of the minor's compromise petition here. But appellant waited six months after the court approved her compromise to invoke *Ahlborn* . . . ." (*Espericueta, supra,* 164 Cal.App.4th at p. 627.)

fairly determine if a settlement is reasonable when the petitioner withholds evidence that a minor's case may be worth more than eight times the proposed settlement amount and when the court is not informed that the petitioner believes the lien amount should be reduced by more than $200,000. Such information would certainly have a bearing on the reasonableness of the compromise." (*Espericueta, supra*, 164 Cal.App.4th at p. 627.)

Thus, a litigant, including a minor, cannot play fast and loose with the judicial system, turning it off and on at will. The concession, once it had been made, that the Department was entitled to $239,474, could not be undone a few months afterwards, nor could the significant total of the claim, $26 million, be unveiled half a year after the court approved the compromise without that information. On these facts, the court's conclusion was without a doubt correct: "Nothing in *Ahlborn* requires the trial court to reevaluate its prior judicial allocation of the medical expenses portion of the minor's settlement." (*Espericueta, supra*, 164 Cal.App.4th. at p. 627.) The social interest in the finality of decisions and the importance of disclosing to the court all relevant information at the time it makes its decision permitted no other conclusion.

*McMillian* is a case much like *Espericueta*. In *McMillian*, a medical malpractice action was brought in January 2002 on behalf of a child who had become totally disabled in February 2001. (*McMillian, supra*, 166 Cal.App.4th at p. 696.)

In January 2003, a collection specialist with the Department learned by chance of the action filed on behalf of the minor a year earlier when a bill for photocopying services was forwarded to the specialist by a Los Angeles County agency. In February 2003, the director sent a notice of lien to the law firm acting on behalf of the minor and followed up with a telephone call; there was no response. The same fate befell a letter sent by the director in January 2004. (*McMillian, supra*, 166 Cal.App.4th at p. 700.)

On January 13, 2004, the minor, his mother, and his grandmother, who was the trustee of a special needs trust, filed for approval of a settlement, under which the foregoing were to receive, respectively, $2.3 million, $110,000 and $90,000. No amount of the settlement was allocated to past medical expenses, which were alleged to be in excess of $250,000. The petition affirmatively represented that because all medical bills had been paid by private insurance, there was no need to notify the director under section 14124.73.[17] In approving the settlement on January 23, 2004, the trial court noted that there

---

[17] Then, as now, section 14124.73 required notice, one to the other, if the beneficiary or the director files an action against third parties.

were no liens since private insurance had paid past medical expenses. (*McMillian, supra,* 166 Cal.App.4th at p. 696.)

On October 14, 2005, the minor, his mother, and his grandmother, now represented by a new law firm, filed petitions to establish a special needs trust for the minor and to modify the trust that had been created in 2001. The petitions asserted that "the instrument creating the special needs trust failed to address an existing Medi-Cal lien, and requested an order approving settlement or payment of the lien." (*McMillian, supra,* 166 Cal.App.4th at p. 696.) In support of the petitions, the minor's grandmother submitted a declaration that stated that the money owed to Medi-Cal was yet to be determined, but that she had been informed via letter from litigation counsel that it was approximately $105,429.54. The petition requested approval of the Medi-Cal lien. (*Ibid.*)

On May 3, 2006, two days after *Ahlborn* was decided, the minor, his mother, and his grandmother filed a motion to reduce the Medi-Cal lien to $623. The motion relied on *Ahlborn.* The director opposed the motion, claiming a lien of $111,783, which had been reduced under section 14124.72 by 25 percent to $83,837. The trial court found the director was entitled to a lien of $83,837 (*McMillian, supra,* 166 Cal.App.4th at pp. 696–697), and the Court of Appeal affirmed.

*McMillian* is identical to *Espericueta* to the extent that both cases involve final decisions approving settlements *and* belated attempts to undo those decisions. Thus, both *Espericueta* and *McMillian* stand for the proposition that settlements that have received the court's final approval cannot be undone on the mere mention of *Ahlborn.* A contrary rule would produce nothing but chaos.

The court in *McMillian* went on to find that the minor's side of the controversy had the burden of proving what the medical costs had been and that there was a failure of proof on this issue. (*McMillian, supra,* 166 Cal.App.4th at pp. 700–704.) "Appellants neither expressly requested an evidentiary hearing on the portion of the settlement reflecting medical payments nor made an offer of proof establishing the necessity for a hearing on this issue." (*Id.* at p. 704.)

It is true, however, that the minor in *McMillian* attempted to apply the *Ahlborn* formula. "Appellants' motion argued only that the probate court was obliged to determine the portion of the settlement reflecting medical payments by reference to a formula they discerned in the factual stipulations in *Ahlborn.* Because *Ahlborn* neither considers nor mandates the use of any such formula, the probate court properly rejected their contention." (*McMillian, supra,* 166 Cal.App.4th at p. 702.)

We agree that *Ahlborn* itself does not require the application of the precise formula used in that case, although we do not think this approach, which has the Supreme Court's approval, should be abandoned lightly. We do not agree, however, that *Ahlborn* did not "consider" the formula—its decision in the case was based on the results of the formula—nor do we agree that *Ahlborn* is of no consequence when it comes to a settlement that has not been allocated between past medical expenses and other damages.

■    Section 14124.76, subdivision (a) is the best evidence of the latter point: "In determining what portion of a settlement, judgment, or award represents payment for medical expenses, or medical care, provided on behalf of the beneficiary and as to what the appropriate reimbursement amount to the director should be, the court shall be guided by the United States Supreme Court decision in *Arkansas Department of Health and Human Services v. Ahlborn*[, *supra*,] 547 U.S. 268 and other relevant statutory and case law." (Italics added.) We think that the cited provision requires an allocation in an otherwise unallocated settlement between past medical expenses and other damages, and it also requires that the director's recovery for a Medi-Cal lien is to be limited to that portion of the settlement that reflects past medical payments. The quoted provision from subdivision (a) of section 14124.76 recognizes not only *Ahlborn*, but it also specifies the role that *Ahlborn* must play in determining "what *portion* of a settlement . . . represents payment for medical expenses" and what the "appropriate reimbursement . . . should be." (§ 14124.76, subd. (a), italics added.) While the precise formula used in *Ahlborn* is not mandated, the principles of that decision *are* mandated as guidelines by subdivision (a) of section 14124.76.

5.   *The Request for Judicial Notice*

■    Shortly after filing the petition, Bolanos requested that we judicially notice a minute order issued by a trial court in an unrelated case involving a Medi-Cal lien. Bolanos does not explain the relevance of the order. To the extent she offers it as legal authority supporting her position, the request is improper. Even assuming for the sake of argument that the case in question involves the same issue as the case before us (a point disputed by the Department), a written trial court ruling has no precedential value. (*In re Molz* (2005) 127 Cal.App.4th 836, 845 [26 Cal.Rptr.3d 131] ["trial court decisions, of course, have no precedential authority"].) The request for judicial notice is denied. For the same reason, we deny Bolanos's subsequent request that we judicially notice an unpublished federal district court decision.

## DISPOSITION

The petition for writ of mandate is granted. The respondent court is directed to vacate its December 21, 2007 order denying petitioner's *Ahlborn* motion, and thereafter to conduct a hearing, or hearings, to determine, consistent with the views expressed in this opinion and in accordance with the provisions of section 14124.76: (1) the portion of the settlement that represents payment for past medical expenses, or medical care; and (2) the maximum amount the director may recover on the Medi-Cal lien. Petitioner is awarded costs on appeal.

Cooper, P. J., and Rubin, J., concurred.

The petition of real party in interest for review by the Supreme Court was denied March 11, 2009, S170161.