Filed 6/25/19

**CERTIFIED FOR PUBLICATION**

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

SECOND APPELLATE DISTRICT

DIVISION EIGHT

| | |
|---|---|
| ETHAN LOMELI, a Minor, etc., | B290608 |
| Plaintiff and Appellant, | (Los Angeles County Super. Ct. No. BC569989) |
| v. | |
| STATE DEPARTMENT OF HEALTH CARE SERVICES, | |
| Defendant and Respondent. | |

APPEAL from an order of the Superior Court of Los Angeles County, Lori Ann Fournier, Judge. Affirmed.

Steven B. Stevens and Steven Weinberg, for Plaintiff and Appellant.

Xavier Becerra, Attorney General, Julie Weng-Gutierrez, Senior Assistant Attorney General, Richard T. Waldow, Supervising Deputy Attorney General, Nicole J. Kau, Deputy Attorney General, for Defendant and Respondent.

*******

1

If you are needy and someone injures you, the government may pay for your medical care but later ask you for repayment if you get a large settlement from the tortfeasor. In California this is by way of Medi-Cal. Medi-Cal seeks repayment from people with settlements so it can provide care to others in need.

This case displays that situation. The trial court approved the existence and amount of the Medi-Cal settlement lien in this case. We affirm. Statutory citations are to the Welfare and Institutions Code.

I

We recount the main facts, which are undisputed.

Ethan Lomeli's guardian sued medical care providers for his catastrophic birth injuries. Through the Medi-Cal system, the Department of Health Care Services paid for his care before and during his lawsuit. Lomeli settled with defendants for $4 million. The Department moved to impose a $267,159.60 lien on this settlement. The trial court granted this motion. Lomeli appeals this May 23, 2018 order.

II

Federal law does not block the Department's lien. Our review of this legal question is independent.

Lomeli argues to the contrary, saying sections 14124.72 and 14124.76 violate the Supremacy Clause of the federal constitution. Lomeli's argument relies solely on an analysis from the *dissent* in *Tristani ex rel. Karnes v. Richman* (3rd Cir. 2011) 652 F.3d 360, 379–387 (*Tristani*). The trial court went with the *Tristani* majority. So do we. At pages 367–375, the *Tristani* majority correctly determined federal law does not prohibit liens like this one.

Briefly, the *Tristani* debate is this. The *Tristani* majority held two provisions of the Social Security Act did not bar state Medicare liens. To effectuate Congress's goals in enacting the

federal Medicare program, the *Tristani* majority interpreted federal statutes as containing implied exceptions to provisions that otherwise seemed to bar the liens.  (See *Tristani, supra,* 652 F.3d at p. 370.)  The dissent agreed some implicit federal exception to these two Social Security statutes did exist.  (*Id.* at pp. 384 (dis. opn. of Pollack, J.) ["must constitute an explicit exception"] & 385 (dis. opn. of Pollack, J.) ["a limited implied exception must be read into the anti-recovery provision"].)  The dissent argued this implicit exception was narrower than the majority's expression of it.

The *Tristani* majority analysis is better for two reasons.

First, a desire to effectuate the legislative purpose drove the majority's analysis.

"The dominant mode of statutory interpretation over the past century has been one premised on the view that legislation is a purposive act, and judges should construe statutes to execute that legislative purpose.  This approach finds lineage in the sixteenth-century English decision *Heydon's Case*, which summons judges to interpret statutes in a way 'as shall suppress the mischief, and advance the remedy.'"  (Katzmann, Judging Statutes (2014) p. 31.)

California courts follow this dominant mode.  In our state, we must interpret words to promote rather than to defeat the general purpose of a statute.  Suppose the language of a statute is reasonably susceptible of two constructions.  If one would produce results that are reasonable, fair, and harmonious with the statute's manifest purpose, and another would produce absurd consequences, we must adopt the former construction.  (*Department of Motor Vehicles v. Industrial Acc. Com.* (1939) 14 Cal.2d 189, 195.)  Like the *Tristani* majority, our fundamental task is to ascertain the intent of the lawmakers to effectuate the purpose of the statute.  (E.g., *Apple Inc. v. Superior Court* (2013) 56 Cal.4th 128, 135.)

Federal and California state law agree on this point: read a statute to effectuate its purpose. The *Tristani* majority correctly discerned Congress's purpose: to ensure Medicaid beneficiaries do not receive a windfall by recovering medical costs they did not pay. (See *Tristani*, *supra*, 652 F.3d at pp. 371–373.)

Second, the *Tristani* majority included common sense and practical reasoning in its analysis. (See *id*. at pp. 374–375.) Common sense and practical reasoning are attractive in legal analysis.

Lomeli adds nothing to the *Tristani* debate and, except for our agreement with that majority's careful and correct analysis, neither do we.

### III

Collateral estoppel does not bar this May 23, 2018 lien. Again our review is independent.

Lomeli incorrectly claims the trial court decided something about the Medi-Cal lien by approving his minor's compromise on August 30, *2016*. Before that 2016 approval, however, Lomeli informed the court his pending petition did not "address the [Medi-Cal] lien at all." Lomeli's representation was correct: the August 30, 2016 order did not address the Medi-Cal lien at all. The trial court decided about the Medi-Cal lien only much later, on May 23, *2018*.

Lomeli's collateral estoppel argument is wrong. Collateral estoppel is about how an earlier decision affects a later one. There must be two decisions before this doctrine can be pertinent. In this case there was only one decision, which was on May 23, 2018. There was no earlier decision of relevance.

The trial court order of August 30, 2016 did not decide anything about the Medi-Cal lien. The text of this order confirms Lomeli's representation that it did not decide the Medi-Cal lien in any way. The order is on Judicial Council form MC-351. Lomeli's

4

lawyer typed his name and address in the heading on page one. The form order states that, "[u]ntil further order of the court," the court reserves jurisdiction "to determine a claim for a reduction of a Medi-Cal lien . . . ." This order continues that "[t]he amount shown payable to the Department of Health Care Services in item 7c(1)(d) of this order is the full amount of the lien claimed by the department but is subject to reduction on further order of the court upon determination of the claim for reduction." Lomeli's lawyer, however, left "item 7c(1)(d)" blank—an oversight, or an acknowledgement the lien issue remained undecided.

As Lomeli represented, this order did not "address the [Medi-Cal] lien at all." The collateral estoppel argument has no sound basis.

Lomeli now argues, erroneously, the August 30, 2016 order indeed did address the Medi-Cal lien, because of what his lawyer wrote in this form's final "Additional orders" section. Lomeli's entry here claims the settlement proceeds are allocated in five ways, with four entries and then a fifth line that reads "Past Medical Expenses - (zero)." Whatever this line might signify, it does not mean this court order determined some issue concerning the Medi-Cal lien, for the reasons stated above.

There is an added and independently adequate reason to disregard this purported allocation. When a private plaintiff and a private defendant settle, it often will be for a lump sum—here, $4 million. The defendant wants only to pay the minimum to flee the lawsuit and does not care how the $4 million is "allocated." From the defendant's perspective, these "allocation" terms are empty words that cost it nothing. Defendants in fact will be happy to please plaintiffs by writing down somewhere that $X is for this and $Y is for that, for this gesture can facilitate the deal at no expense to defendants. And plaintiffs can have an illegitimate tactical

5

reason for presenting an "allocation": to reduce Medicare's recovery and to keep more money for themselves. (Cf. *Arkansas Dept. of Health and Human Services v. Ahlborn* (2006) 547 U.S. 268, 287–288 (*Ahlborn*) [discussing risk that settling private parties will allocate away the State's interest]; *id.* at p. 288, fn. 18 ["concerns about settlement manipulation"]; *Wos v. E.M.A. ex rel. Johnson* (2013) 568 U.S. 627, 634 [possibility exists that Medicaid beneficiaries and tortfeasors might collaborate to allocate an artificially low portion of a settlement to medical expenses].)

The August 30, 2016 order did not address the Medi-Cal lien at all. Lomeli's contrary argument is invalid.

IV

The trial court's lien calculation of $267,159.60 was correct. We independently review the court's approach to lien calculation, which was proper as a matter of law. Substantial evidence supports the application of this approach in this case.

We first explain the trial court's method, which one can call a reality-based approach.

Here is what the court did. The trial court adopted the Department's approach. This approach was based in reality because it focused on Lomeli's actual medical costs. Those costs were for medical services provided between January 24, 2014 (the date of birth and injury) and July 13, 2016. Five pages in the record list these actual costs, procedure by procedure. The costs total $367,646.60. The Department then reduced this gross total of $367,646.60 by 25 percent to account for a reasonable share of Lomeli's attorney's fee. A statute requires this 25 percent reduction. (§ 14124.72, subd. (d).) The Department further subtracted $8,575.35 to account for its share of Lomeli's total litigation costs of $93,300. This further reduction was also according to statute. (See *ibid.*)

This reality-based approach yielded a lien sum of $267,159.60 ($367,646.60 - $91,911.65 - $8,575.35 = $267,159.60). In other words, the gross sum of actual costs, minus an attorney fee adjustment, minus a litigation cost adjustment, equaled the proper lien amount.

This approach is legally valid and was grounded in verified facts about this case. The law requires nothing more.

Here is why this approach was proper. The law demands a "rational approach." (*Martinez v. State Dept. of Health Care Services* (2017) 19 Cal.App.5th 370, 374 (*Martinez*) [courts must use a rational approach, quoting *Bolanos v. Superior Court* (2008) 169 Cal.App.4th 744, 754].) This reality-based approach was rational, for it was based on reality and sound logic.

Lomeli's attack on this approach is in error. Lomeli cites five cases to contest this approach, but to no avail.

First, Lomeli cites *Ahlborn*, but that case's holding does not impugn the trial court's order. *Ahlborn* held a state's lien on a Medicaid recipient's tort settlement is limited to the recipient's medical costs. (*Ahlborn, supra,* 547 U.S. at pp. 272, 280, & 292; cf. *Martinez, supra*, 19 Cal.App.5th at p. 372 [*Ahlborn* held a state's lien on a Medicaid recipient's tort settlement is limited to the recipient's medical costs].) In this case, the Department sought to recover only benefits attributable to medical expenses. This lien comports with *Ahlborn*.

The California Legislature incorporated *Ahlborn* by name into state law. (See § 14124.76 ["In determining what portion of a settlement, judgment, or award represents payment for medical expenses, or medical care, provided on behalf of the beneficiary and as to what the appropriate reimbursement amount to the director should be, the court shall be guided by the United States Supreme Court decision in *Arkansas Department of Health and Human*

*Services v. Ahlborn* (2006) 547 U.S. 268 and other relevant statutory and case law."].)

 *Ahlborn* is governing law. What does that mean?

 *Ahlborn*'s holding was narrow because its factual setting was unusual. In *Ahlborn*, the state agency entered an atypical series of stipulations that made the case's factual situation extraordinary. The agency stipulated Ahlborn's entire claim was reasonably valued at $3,040,708.12. (*Ahlborn*, *supra*, 547 U.S. at p. 274.) A stipulation like this is unusual. In a typical case like Lomeli's, the reasonable value of the plaintiff's case is sharply disputed.

 A moment's reflection shows why the reasonable value of a plaintiff's personal injury suit typically is sharply disputed. How would an objective person discover the reasonable value of a tort case that has yet to be settled or tried? Usually, the informed parties disagree—intensely. The plaintiff has an earnest hope that may be a reliable and canny prediction, mere wishful thinking, empty bluffing, or something else. The defense commonly takes a less expansive view, which may be based on a reliable and canny prediction, mere wishful thinking, empty bluffing, or something else. The uncertainty about the reasonable value is considerable. And it is twofold. First, the probability of a finding of liability can range from zero to 100 percent certainty. Second, damages results can vary between nothing and some extremely large number. So we have a sharply disputed argument, not agreement on an objective value.

 To treat the "reasonable value" of the plaintiff's pretrial claim as an objective sum is naively unrealistic—unless there is a stipulation, as there was in *Ahlborn*. That stipulation made the *Ahlborn* situation an outlier. There was no stipulation here. *Ahlborn* does not alter the analysis in this case.

Nothing in *Ahlborn* disapproved of a reality-based approach in cases lacking stipulations.  Lomeli concedes as much.

Lomeli cites other inapposite cases.  In some, the Department presented no evidence to the trial court.  (See *Lima v. Vouis* (2009) 174 Cal.App.4th 242, 248; *Lopez v. Daimler Chrysler Corp.* (2009) 179 Cal.App.4th 1373, 1377, 1386, 1387; *Aguilera v. Loma Linda University Medical Center* (2015) 235 Cal.App.4th 821, 826 (*Aguilera*).)   This case differs because here the Department did present solid evidence to support its reality-based approach.

Lomeli likewise cites *Bolanos v. Superior Court* (2008) 169 Cal.App.4th 744, 748, where the trial court did not determine the portion of the settlement that was allocable to medical expenses.  By contrast, here the trial court did determine the portion of the settlement allocable to medical expenses.  The *Bolanos* holding does not impeach the decisionmaking in this case.

Finally, Lomeli cites the *Martinez* case, which is consistent with the analysis here.  *Martinez* held it was not rational to credit injured victims with more noneconomic damages than they could possibly have recovered, or with larger hospital bills than those actually paid.  (*Martinez*, *supra*, 19 Cal.App.5th at p. 374.)  There were no such errors here.  The *Martinez* opinion likewise ruled the Department must reduce its lien by 25 percent for attorney fees as required by section 14124.72, subdivision (d).  The Department in *Martinez* conceded this error.  (*Id.* at p. 375.)  Here, the Department correctly performed this reduction.  *Martinez*'s holdings do not bear on this case.

Lomeli critiques the trial court order in another way.  As an alternative to the reality-based approach, Lomeli proposes what can be called a "best-case scenario" approach.  Lomeli's idea works like this.  Reduce the Department's lien by hypothesizing Lomeli's best-

case scenario for his tort suit. Using this hypothetical best-case scenario, create the following fraction:

*(Amount of actual settlement)*

divided by

*(Hypothetical best-case scenario).*

Then multiply the Department's medical costs expenditures by this fraction to calculate the Department's lien.

Under Lomeli's approach, the larger his best-case scenario, the smaller the Department's lien and the more money Lomeli gets to keep. If the settlement is for $1 and Lomeli says his best-case scenario would have been a $10 recovery, for instance, these figures would dictate the Department can recover only one-tenth of what the Department paid out. If Lomeli inflates his best-case scenario to $100, then the Department's recovery drops to 1/100 of its payments. And so forth.

In this case, Lomeli says his best-case scenario would be a recovery of $18.9 million.

Lomeli's proposed best-case scenario approach has three weaknesses.

First, this approach is based on a hypothetical number rather than an actual number. Lomeli's $18.9 million number has not been tested by stipulation or by trial. The number is Lomeli's alone. His $18.9 million is a hypothesis that assumes (1) the odds Lomeli can prove liability are 100 percent and (2) the fact finder would award Lomeli every dollar of damages Lomeli has conceived and requested. These assumptions are unreal. If Lomeli's lawyers had believed them, they would not have settled an $18.9 million sure thing for $4 million.

Second, Lomeli's suggested approach is manipulable. When we give one side or the other unilateral authority to say what the case is worth, we invite exaggeration. Lomeli says his expert

10

witnesses back him up, but experts are no solution. As noted in 1858, "[e]xperience has shown that opposite opinions of persons professing to be experts may be obtained to any amount . . . ." (*Winans v. New York & E.R. Co.* (1858) 62 U.S. 88, 101; cf. Foster, *Expert Testimony,—Prevalent Complaints and Proposed Remedies* (1897) 11 Harv. L.Rev. 169, 170–71 ["It is often surprising to see with what facility and to what an extent [experts'] views can be made to correspond with the wishes or interests of the parties who call them . . . . They are selected on account of their ability to express a favorable opinion, which, there is great reason to believe, is in many instances the result alone of employment and the bias growing out of it."]; *Sargon Enterprises, Inc. v. University of Southern California* (2012) 55 Cal.4th 747, 755, 766 [expert testified elaborately but baselessly that damages exceeded one billion dollars].)

Third, the best-case scenario approach poses equity questions. The Department can serve fewer needy patients when it has fewer dollars. The effect of diminishing the Department's recovery is to benefit Lomeli, with his $4 million settlement, at the expense of others who need medical care but who lack settlement funds. Lomeli does not attempt to justify this result.

In sum, the trial court did not err by preferring a reality-based approach over Lomeli's best-case scenario proposal.

Lomeli makes other arguments, to no effect. He condemns the Department's prediction it will pay Lomeli's future medical needs, but the challenged order did not incorporate this prediction. Lomeli faults the trial court for striking the declaration of one David Fractor, but this declaration did not matter. The Department's analysis and the trial court's order would have been the same with or without this declaration. Lomeli argues no admissible evidence commits the Department to paying future

11

benefits to him.  This argument is beside the point because the court's approach was based on past costs, not future payments. Lomeli also contends the Department is seeking to be reimbursed twice "for the same future contingent benefits."  This is inaccurate because this lien relates only to past payments.  Lomeli attacks the reasoning and holding of *Aguilera v. Loma Linda University Medical Center*, *supra*, 235 Cal.App.4th 821.  *Aguilera*'s holding is not pertinent to this case, so this attack is not relevant.  Lomeli also argues the Department failed to meet its burden of proof, but the Department's reality-based approach was sound and supported.

## DISPOSITION

We affirm.  The Department is entitled to costs on appeal.


WILEY, J.


WE CONCUR:


BIGELOW, P.J.


GRIMES, J.