Filed 4/2/15

CERTIFIED FOR PUBLICATION

COURT OF APPEAL, FOURTH APPELLATE DISTRICT

DIVISION ONE

STATE OF CALIFORNIA

| | |
|---|---|
| ASHLYNN AGUILERA, a Minor, etc., | D066701 |
| Plaintiff and Appellant, | |
| v. | (Super. Ct. No. CIVDS1106102) |
| LOMA LINDA UNIVERSITY MEDICAL CENTER et al., | |
| Defendants; | |
| STATE DEPARTMENT OF HEALTH CARE SERVICES, | |
| Lien Claimant and Appellant. | |

APPEAL and cross-appeal from an order of the Superior Court of San Bernardino County, John M. Pacheco, Judge.  Reversed and remanded.

Kamala D. Harris, Attorney General, Kathleen A. Kenealy, Chief Assistant Attorney General, Julie Weng-Gutierrez, Assistant Attorney General, Jennifer M. Kim and Jonathan E. Rich, Deputy Attorneys General, for Claimant and Appellant.

Law Office of Philip Michels & Associates, Michels & Lew and Steven B. Stevens for Plaintiff and Appellant.

This case involves a claim for reimbursement made by California's State Department of Health Care Services (the Department) for funds expended on behalf of an injured party by the state's Medi-Cal program. The injured party, Ashlynn Aguilera, filed a special motion to determine the Department's lien under Welfare & Institutions Code section 14124.76. (Undesignated statutory references are to the Welfare & Institutions Code.)

We conclude the trial court properly employed the methodology used in *Arkansas Dept. of Health and Human Services v. Ahlborn* (2006) 547 U.S. 268, 274 (*Ahlborn*), but erred when it refused to reduce the Department's lien to account for the attorney fees and expenses Ashlynn incurred. As we shall discuss, the matter is remanded to the trial court to set aside the order and conduct further proceedings (1) regarding whether the cost of Ashlynn's future at-home attendant care (attendant care) and medical care should be included in its *Ahlborn* calculation, and (2) apply section 14124.72, subdivision (d) (14124.72(d)) to determine the Department's share of Ashlynn's attorney fees and costs.

FACTUAL AND PROCEDURAL BACKGROUND

When Ashlynn was two months old she suffered injuries as a result of the negligence of a physician. She underwent a hemispherectomy (removal of half of the cerebral portion of her brain) and had a shunt implanted to relieve pressure inside her skull caused by excess cerebrospinal fluid. Ashlynn suffers from global developmental delay, mental retardation and behavioral disorders. She is also dependent on a gastronomy tube.

2

Ashlynn filed an action for medical malpractice and her parents settled the action for $950,000. The settlement was near the defendant's liability policy limits. The trial court approved the settlement, along with the request of Ashlynn's counsel for attorney fees and costs totaling $253,006. Ashlynn's parents received $85,000 of the settlement as a resolution of their prospective wrongful death action against the defendant. The balance of the settlement was placed in a special needs trust.

The Department asserted a lien on Ashlynn's recovery, based on the $211,191 that it spent on her behalf. The Department initially demanded $154,295 to satisfy its lien. Ashlynn filed a special motion to determine the Department's lien under section 14124.76. Ashlynn supported her motion with declarations from her counsel and two physicians, presenting evidence regarding: her life expectancy; the care she will need throughout her life; the cost of future care; lost earning capacity; and the value of her pain and suffering. Among other things, Ashlynn presented evidence that she needs 16 hours per day of licensed vocational nurse (LVN) attendant care until she reaches the age of 21, and 24 hours per day LVN attendant care for the rest of her life. Rounded to the nearest dollar, she claimed that the full value of her claim was as follows:

| | |
|---|---|
| Past Medical Costs: | $ 211,1911 |
| Future Medical Costs (Present Value): | $1,560,429 |
| Future Attendant Costs (Present Value): | $11,641,244 |
| Loss of Earning Capacity (Present Value): | $ 1,126,794 |
| General Damages: | $ 250,000 |
| *Full Value of Claim:* | *$14,789,658* |

3

Ashlynn argued the Department's lien should be $10,046. She calculated this lien amount via a methodology used in *Ahlborn*. (*Ahlborn*, *supra*, 547 U.S. at p. 274.) The Department presented no evidence in its opposition to dispute this evidence. It argued that no statutory or case authority mandated the "rigid mathematical formula" used by Ashlynn. It claimed its lien was not limited to the past medical care expenses it paid, but extended to Ashlynn's future care. The Department also asserted its lien should not be reduced by the amount of attorney fees and costs expended by Ashlynn to obtain the settlement. The Department stated it would accept 16 percent of the total settlement to satisfy its lien, or about $150,175.

In her reply, Ashlynn complained the Department failed to provide a rational alternative method for calculating the lien amount, no court has embraced the Department's arguments and the Department "plucked" the number "from the air." The Department then filed a supplemental opposition, which adopted the formula used by Ashlynn, but eliminated the value of Ashlynn's future medical expenses ($13,201,673) from the calculation on the grounds it would be paying those future expenses, resulting in a lien amount of $140,537.

The trial court used the formula set forth by Ashlynn and later adopted by the Department. Although $85,000 of the settlement proceeds went to Ashlynn's parents, the court followed Ashlynn's calculations and used the whole $950,000 as the settlement amount, leading to a result slightly more favorable to the Department. However, it excluded from the calculation medical expenses the Department would pay on Ashlynn's

4

behalf in the future, but included future expenses for attendant care. It also declined to reduce the Department's recovery to account for Ashlynn's attorney fees and costs. This resulted in a lien award of about $15,311. The Department timely appealed. Ashlynn timely cross-appealed.

DISCUSSION

I. *Background Law*

Medicaid is a cooperative federal and state program that pays for medical services to individuals who cannot afford to pay their own medical costs. (*Ahlborn*, *supra*, 547 U.S. at p. 275; see 42 U.S.C. § 1396 et seq.) "Under the Medicaid program, the federal government provides financial assistance to states that voluntarily participate to assist them in providing health care to needy persons. If a state agrees to establish a Medicaid plan, the federal government agrees to pay a specific percentage of expenses. Participating states must comply with federal Medicaid law. One of the laws is that the state Medicaid agency must seek reimbursement for medical expenses from liable third parties." (*Branson v. Sharp Healthcare, Inc.* (2011) 193 Cal.App.4th 1467, 1473-1474 (*Branson*).) California participates in the Medicaid program through the California Medical Assistance Program (Medi-Cal) (§ 14000 et seq.). (*Branson*, at p. 1474.)

In *Ahlborn*, the United States Supreme Court held that in seeking reimbursement "the State's assigned rights extend only to recovery of payments for medical care." (*Ahlborn*, *supra*, 547 U.S. at p. 282.) In response to *Ahlborn*, our Legislature amended the California statutes governing claims for reimbursements made by the Department for funds expended on behalf of injured parties by the Medi-Cal program. (*Bolanos v.*

5

*Superior Court* (2008) 169 Cal.App.4th 744, 747 (*Bolanos*).) Namely, from any settlement, judgment or award obtained by an injured party, the Department is limited to recovering payments it made for medical expenses. (§ 14124.76, subd. (a).) "In determining what portion of a settlement, judgment, or award represents payment for medical expenses, or medical care, provided on behalf of the beneficiary and as to what the appropriate reimbursement amount to the director should be, the court shall be guided by . . . *Ahlborn* . . . and other relevant statutory and case law." (*Ibid.*) "[W]hen the settlement, judgment or award does not specify what portion thereof was for past medical expenses, an allocation must be made in the settlement, judgment or award that indicates what portion is for past medical expenses as distinct from other damages. The director's recovery is limited to that portion of the settlement that is allocated to past medical expenses." (*Bolanos*, at p. 748.)

Settlements, however, are often not allocated between past medical expenses and other damages. This was the situation in *Ahlborn*. (*Ahlborn*, *supra*, 547 U.S. at p. 274.) Thus, the parties in *Ahlborn* stipulated to the use of a formula (the *Ahlborn* formula) as an allocation method. (*Id.* at p. 281, fn. 10.) Numerous courts have since accepted the *Ahlborn* formula as an acceptable method of approximating the amount of medical expenses. (*Lopez v. Daimler Chrysler Corp.* (2009) 179 Cal.App.4th 1373, 1378 (*Lopez*); *Lima v. Vouis* (2009) 174 Cal.App.4th 242, 260 (*Lima*); *Bolanos*, *supra*, 169 Cal.App.4th at p. 748; see also, *In re E.B.* (2012) 229 W.Va. 435, 461; *Idaho Dep't of Health & Welfare v. Hudelson* (2008) 146 Idaho 439, 446; *Lugo v. Beth Israel Med. Ctr.* (N.Y. Sup. Ct. 2006) 13 Misc.3d 681, 687-688.) The *Ahlborn* formula is the ratio of the

6

settlement to the total claim, when applied to the benefits provided by the Department. (*Bolanos*, *supra*, 169 Cal.App.4th at p. 753.)  Expressed mathematically, the *Ahlborn* formula calculates the reimbursement due as the total settlement divided by the full value of the claim, which is then multiplied by the value of benefits provided.  (Reimbursement Due = [Total Settlement ÷ Full Value of Claim] x Value of Benefits Provided.)  The parties' dispute focuses on the variable addressing the full value of Ashlynn's claim; specifically, whether future attendant care and medical care should be included in this variable.

Recently, the United States Supreme Court addressed the division of a settlement between medical and nonmedical expenses for purposes of determining a Medicaid lien in *Wos v. E.M.A.* (2013) __ U.S. __, [133 S.Ct. 1391, 185 L.Ed.2d 471] (*Wos*).  In *Wos*, our high court reviewed a North Carolina statute that established a conclusive presumption that when the state's Medicaid expenditures exceed one-third of a beneficiary's tort recovery, that one-third of the recovery represented compensation for medical expenses, even if the settlement or verdict expressly allocated a lower percentage of the judgment to medical expenses.  (*Id*. at pp. 1397-1398.)  The court concluded that "[a]n irrebuttable, one-size-fits-all statutory presumption [was] incompatible with the Medicaid Act's clear mandate that a State may not demand any portion of a beneficiary's tort recovery except the share that is attributable to medical expenses." (*Id.* at p. 1399.)  The Supreme Court recognized that in some cases the parties may stipulate to an allocation, but where a stipulation does not exist, fair allocations must be decided by the

7

court at a hearing. (*Id.* at p. 1400.) The Supreme Court cited section 14124.76 as an example of a statute providing for such a hearing procedure. (*Wos*, at p. 1401.)

II. *Future Attendant Care and Medical Care*

1. Additional Facts

The Department presented a declaration from one of its employees, Rhonda Wyatt, an associate governmental program analyst working in the Third Party Liability and Recovery Division. Wyatt summarized the type of benefits available to Medi-Cal beneficiaries. Wyatt reviewed the physician declarations presented by Ashlynn in support of her motion and "confirm[ed] that the foregoing benefits and services described in paragraph 5 above encompass all of the benefits and services described in those declarations."

Ashlynn noted that Wyatt cited no statutes or regulations requiring Medi-Cal to pay for attendant care or showing that Medi-Cal paid for these expenses in the past. She complained the Department cited no authority to support its conclusion that it would pay these future expenses. The trial court issued a tentative ruling that included the approximately $11.5 million for Ashlynn's future attendant care in its calculation.

After the court issued its tentative ruling the Department presented a declaration from another of its employees, Alberta Baral. Baral's declaration was virtually identical to Wyatt's declaration, but added the words "attendant care by an LVN" to the description of the types of therapies for which Medi-Cal pays. Ashlynn objected to Baral's declaration as untimely. The trial court sustained Ashlynn's objection to the Baral declaration.

8

At oral argument, the Attorney General confirmed with the trial court that it accepted the representation of Ashlynn's counsel that Medi-Cal would not pay for future attendant care services and thus the value of these services should be included in the calculation. The court's final ruling on the motion included the value of attendant care services in its calculation. The trial court, however, eliminated from its calculation the cost of Ashlynn's future medical care, presumably concluding that Medi-Cal would be paying for Ashlynn's future medical care.

2. Analysis

The Department does not contest the trial court's use of the *Ahlborn* formula to calculate the reimbursement it is due. To the extent the Department continues to assert the *Ahlborn* formula is not a one-size-fits-all formula to be applied in all subsequent cases we note the Department failed to suggest an alternative method for calculating its lien.

The Department's and Ashlynn's respective appeals focus on the value of one of the variables used in the *Ahlborn* formula; namely, they dispute the number used by the trial court for the full value of Ashlynn's claim. The Department asserts the full value of Ashlynn's claim should not include the amount of her future expenses for attendant care, estimated to be $11.5 million, as the Department will be paying those future expenses for Ashlynn through the Medi-Cal program. Eliminating those future expenses from the calculation results in a much higher ratio, and thus, a much higher recovery by the Department. Specifically, the Department argues the trial court's *factual finding* that Medi-Cal will not pay Ashlynn's $11.5 million in future expenses for attendant care is contrary to the substantial evidence in the record.

9

Ashlynn contends Wyatt's declaration does not show the Department will or can pay all of her future attendant care and medical expenses for the rest of her life and these future expenses should be included in determining the full value of her claim. Accordingly, she argues we should affirm the trial court's finding that Medi-Cal will not pay her future attendant care expenses. In her appeal, she asserts we should reverse the trial court's finding that Medi-Cal will pay her future medical care expenses for the same reasons she argued above, i.e., Wyatt's declaration does not show the Department will or can pay all of her future medical expenses for the rest of her life. The Department responds that the trial court's elimination of the cost of future medical expenses from the *Ahlborn* calculation properly interpreted prevailing law. For Ashlynn's appeal, both parties essentially incorporated by reference their arguments for the Department's appeal. Accordingly, we discuss both appeals together. Additionally, because both appeals focus on whether future attendant care and future medical care should be included or excluded from the *Ahlborn* calculation, where appropriate, we refer to these future expenses together as future health care expenses.

The Department asserts the trial court erred when it refused to accept Wyatt's uncontroverted and sworn declaration attesting that Medi-Cal had approved and would be paying for Ashlynn's future attendant care. Citing *McMillian v. Stroud* (2008) 166 Cal.App.4th 692 (*McMillian*), the Department claims the trial court failed to recognize that as a debtor, Ashlynn had the burden of proving the Department did not cover and would not pay for her future attendant care. The Department asserts the matter should be reversed and remanded with instructions that the trial court accept the Department's

10

sworn testimony that Medi-Cal will pay about $11.5 million for attendant care; thus, the trial court erred when it excluded these expenses in determining the full value of Ashlynn's claim. Ashlynn asserts the trial court correctly rejected the Department's purported promise to pay for future attendant care as speculative. For the same reasons, she contends the trial court erred when it found that Medi-Cal will pay for all of her future medical care expenses.

In *McMillian*, the court analogized the health care agency to a creditor and concluded that the debtor-benefit recipient bears the burden of proof on the affirmative defense that the amount demanded to satisfy the lien exceeds what is permitted by law. (*McMillian*, *supra*, 166 Cal.App.4th at p. 701.) Here, Ashlynn moved to reduce the Department's lien, arguing that the *Ahlborn* formula applied and presenting evidence regarding the full value of her claim, including the about $11.5 million for future attendant care. Ashlynn satisfied her burden of proving the facts essential to her claim for relief. *Lopez, Lima* and *Bolanos* all stand for the proposition that use of the *Ahlborn* formula is a reasonable method for calculating the Department's lien. (*Ante*, part I.)

In opposition to the motion, the Department argued the *Ahlborn* formula did not apply. Eventually, in its supplemental opposition, the Department adopted the *Ahlborn* formula. The Department presented Wyatt's declaration to support its contention that the about $11.5 million for future attendant care should be removed from the calculation because it would be paying these future expenses. Thus, the question before the trial court was whether the about $11.5 million for future attendant care should be removed from the calculation based on Wyatt's declaration. The trial court rejected Wyatt's

11

declaration as speculative and included future expenses for attendant care in its calculation. The question before us is whether the trial court erred when it (1) rejected Wyatt's declaration as substantial evidence showing the Department would pay Ashlynn's future attendant care and (2) apparently accepted the declaration as substantial evidence showing the Department would pay Ashlynn's future medical care.

By presenting Wyatt's declaration, the Department tried to avoid the issue it faced in *Lima*. In *Lima*, the Department impliedly argued it would be responsible for all or a substantial portion of the plaintiff's future medical expenses. (*Lima*, *supra*, 174 Cal.App.4th pp. 261-262.) The *Lima* court stated: "[The Department's] contention in this regard is unsupported by authority; *Ahlborn*, *supra*, 547 U.S., 268, does not squarely address the issue, but appears to assume that the lien rights under discussion there related to amounts *actually paid* by the state agency on the Medicaid recipient's behalf. Even assuming, however, that [the Department's] contention concerning future medical expenses has arguable legal merit, it lacks factual support. The record contains no evidence on the issue of [the Department's] responsibility for future medical expenses, much less a commitment by [the Department] to pay such expenses, and the trial court made no findings on the issue. Thus, regardless of its legal merit, we reject the contention concerning future medical expenses because of the lack of factual support. We do not reach the issue of whether [the Department] could theoretically impose a valid lien on medical expenses it may be required to pay in the future." (*Id.* at p. 262.)

We agree in theory with the Department's contention that future health care expenses must be excluded, as a matter of law, in applying the *Ahlborn* formula to reduce

12

the Department's lien, because if future health care expenses were to be included, the Department would be forced to accept a lower percentage of its total lien based on the amount of future benefits that will be paid by Medi-Cal. However, as we shall discuss, excluding such expenses is contingent on the Department presenting sufficient evidence that it will in fact pay Ashlynn's expenses as long as she qualifies for the benefits that she is presently receiving.

The Department presented evidence suggesting it would pay all of Ashlynn's future health care expenses. Wyatt stated that since 2012 Ashlynn has received and will continue to receive full scope Medi-Cal benefits as long as her disability exists, that her Medi-Cal eligibility aid code expressly permits that she will receive full benefits without any requirement that she share in the cost of that care, and review of the evidence presented by Ashlynn regarding her future care show this care is included in the full scope Medi-Cal benefits that Ashlynn is entitled to receive. Ashlynn contends this showing was insufficient. She argues the Department offered no evidence regarding its funding forty years in the future, what benefits will be available in the future, or how future eligibility might be determined for whatever benefits might be available for the next forty years. She also complains Wyatt does not establish any expertise with regard to benefit eligibility or benefit determinations, either in the past or for the future.

Ashlynn does not dispute that Medi-Cal is the only foreseeable source of payment for her future health care expenses. We agree with the Department's argument that it is inequitable for Ashlynn to use the estimated value of her future health care expenses to

13

reduce the Department's claim as the only evidence in the record shows Medi-Cal *will* be paying these expenses. Ashlynn's future health care needs are uncertain and necessarily based on reasoned assumptions and estimates from health care professionals. Similarly, the benefits the Department will offer in the future and its future funding for these benefits is uncertain and can be based on reasonable assumptions and estimates. Stated differently, it is impossible for either party to predict the future. We believe it is unjust to require absolute certainty from the Department regarding how Medi-Cal eligibility will be determined in the future, whether Ashlynn will remain Medi-Cal eligible, what benefits it will provide in the future and whether funding will exist for these future benefits. To the extent the trial court required such certainty, it erred.

Nonetheless, as Ashlynn notes, the Department's evidentiary showing was lacking in a number of respects. Wyatt stated her duties included negotiating and collecting Medi-Cal liens. Nothing in her declaration suggested any expertise with regard to past or future benefit eligibility or benefit determinations. Additionally, Wyatt cited no statutes or regulations requiring that Medi-Cal pay for all her health care needs, showing that Medi-Cal paid for these expenses in the past or that it is reasonably probable Medi-Cal will pay all of these expenses in the future. These defects are potentially correctable.

Because we have articulated a new standard, we remand this matter for further proceedings, including the presentation of additional evidence by either party. Any declarations must establish the declarant's expertise in Medi-Cal benefits, funding and eligibility determinations. (Evid. Code, § 720.) The declarations must also be supported

14

with citations to applicable statutes or regulations regarding current Medi-Cal eligibility, the type of health care currently available under Medi-Cal, past funding to pay for such health care, and estimated future funding to pay for the type of health care at issue. Based on the evidence provided, the trial court must make a determination whether it is reasonably probable the Department will pay Ashlynn's future health care expenses. If the trial court makes such a finding, it is directed to exclude these expenses from its *Ahlborn* calculation.

The Department also asserts the trial court abused its discretion in sustaining Ashlynn's objection to the admissibility of Baral's declaration as untimely. This argument is moot based on our conclusion that the matter must be remanded for further proceedings.

### III. *Attorney Fees and Costs*

Ashlynn contends the trial court erred in not reducing the Department's recovery to account for the attorney fees and expenses she incurred to create the common settlement fund from which the Department sought its recovery. She claims that none of the statutes articulate a waiver of the common fund doctrine. She also notes that the court in *Branson* calculated the Department's recovery by including a reduction for attorney fees and costs. (*Branson*, *supra*, 193 Cal.App.3d at p. 1479.)

Before litigation began, the Department proposed that section 14124.72(d) applied and offered to reduce its lien under this statute to reflect attorney fees and expenses incurred by Ashlynn, but Ashlynn rejected the offer. It later argued to the trial court that Ashlynn's reliance on section 14124.72 to support her attorney fees and costs argument

15

was misplaced as this section did not apply per the language of section 14124.785. The trial court denied Ashlynn's request to reduce the Department's recovery to account for attorney fees and litigation costs incurred by Ashlynn. The trial court interpreted sections 14124.72, 14124.76, 14124.78 and 14124.785 as barring such a reduction. As we shall explain, we reject this interpretation and conclude that section 14124.72(d) applies.

Sections 14124.70 et. seq. set for a statutory scheme to determine the Department's reimbursement amount for benefits paid under Medi-Cal. The Department can obtain reimbursement by filing an action directly against a third-party tortfeasor (§ 14124.71), by filing a lien against a beneficiary's settlement, judgment or award (§ 14124.72), or by intervening in a Medi-Cal beneficiary's action against a third party (§ 14124.73). Section 14124.72(d) provides:

> "Where the action or claim is brought by the beneficiary alone and the beneficiary incurs a personal liability to pay attorney's fees and costs of litigation, the director's claim for reimbursement of the benefits provided to the beneficiary shall be limited to the reasonable value of benefits provided to the beneficiary under the Medi-Cal program less 25 percent which represents the director's reasonable share of attorney's fees paid by the beneficiary and that portion of the cost of litigation expenses determined by multiplying by the ratio of the full amount of the reasonable value of benefits so provided to the full amount of the judgment, award, or settlement."

"Prior to *Ahlborn*, California law specified that the entire amount of a beneficiary's settlement was available to satisfy a Medi-Cal lien. [Citation and footnote deleted.] In May 2006, a unanimous Supreme Court in *Ahlborn* held that a state Medicaid agency cannot 'lay claim to more than the portion of [the beneficiary's] settlement that represents medical expenses.' [Citation.] Following *Ahlborn*, the California Legislature

16

amended . . . sections 14124.76 and 14124.78, effective August 24, 2007. Section 14124.76, subdivision (a) now provides that '[r]ecovery of the director's lien from an injured beneficiary's action or claim is limited to that portion of a settlement, judgment, or award that represents payment for medical expenses, or medical care, provided on behalf of the beneficiary.' Section 14124.76 further provides that all reasonable efforts shall be made to obtain the Department's advance agreement to a determination of the portion of a settlement, judgment or award that represents payment for medical expenses or medical care; in the absence of such advance agreement, the matter is to be submitted to a court for determination. Section 14124.76 further provides that in determining what portion of a settlement, judgment or award represents payment for medical expenses or medical care and what the appropriate reimbursement amount should be, the court is to be guided by *Ahlborn* and other relevant statutory and case law." (*Espericueta v. Shewry* (2008) 164 Cal.App.4th 615, 623.)

Before *Ahlborn*, the Department could claim " 'the entire amount of any settlement of the injured beneficiary's action or claim," with the caveat that "in no event shall the . . . claim exceed one-half of the beneficiary's recovery after deducting for attorney's fees, litigation costs, and medical expenses relating to the injury paid for by the beneficiary.' " (*Branson*, *supra*, 193 Cal.App.4th at p. 1474, citing former § 14124.78.) Following *Ahlborn*, the California Legislature amended section 14124.78 to read: " 'Notwithstanding any other provision of law, in no event shall the director recover more than the beneficiary recovers after deducting, from the settlement, judgment, or award, attorney's fees and litigation costs paid for by the beneficiary.' " (*Branson*, at p. 1475,

17

citing current § 14124.78.) Following *Ahlborn*, the Legislature also added section 14124.785, which provides: " 'The director's recovery is limited to the amount derived from applying Section 14124.72, 14124.76, or 14124.78, whichever is less.' " (*Branson* at p. 1475, citing current § 14124.785.)

We construe statutes with reference to the entire statutory scheme of which they are a part and sections relating to the same subject must be read together " 'so that the whole may be harmonized and retain effectiveness.' " (*Ford & Vlahos v. ITT Commercial Finance Corp.* (1994) 8 Cal.4th 1220, 1234.) The Department reads section 14124.785 as setting forth three separate methods of apportioning its claim — sections 14124.72(d), 14124.76, subdivision (a) or 14124.78. We reject this assertion as nonsensical. Rather, as the *Bolanos* court explained, sections 14124.72(d), 14124.76, subdivision (a) and 14124.78 set forth limitations on the Department's recovery. Section 14124.76, subdivision (a) limits the director's recovery "to that portion of a settlement, judgment, or award that represents payment for medical expenses, or medical care, provided on behalf of the beneficiary." (*Bolanos*, *supra*, 169 Cal.App.4th at p. 755.) Section 14124.72(d) limits the Department's recovery to the "reasonable value of benefits provided to the beneficiary under the Medi-Cal program less 25 percent" with "benefits" limited to those expended for medical care and services. (*Bolanos*, at pp. 756-757.) Section 14124.78 "imposes a single, absolute limitation on the director's recovery that precludes the reimbursement of medical expenses from the beneficiary's own resources." (*Id.* at p. 757.) As the *Bolanos* court noted, out of the three limitations set forth in section 14124.785, the most important limitation is that contained in 14124.76. (*Id.* at p. 757.)

18

Where, as here, the Department filed a lien, section 14124.72(d) sets forth the method for determining the Department's share of the beneficiary's attorney fees and costs. Accordingly, the trial court erred when it refused to reduce the Department's lien to account for the attorney fees and expenses Ashlynn incurred. Because section 14124.72(d) applies, we reject Ashlynn's argument that we should depart from the statutory scheme and use the common fund doctrine to determine the Department's contribution to her attorney fees and costs.

IV. *Requests for Judicial Notice and Summary*

Ashlynn filed a request that we judicially notice (Evid. Code, § 452) or take as additional evidence (Code Civ. Proc., § 909) Wyatt's deposition testimony in a separate action to show inconsistency with her declaration. Namely, that Wyatt testified, in part, that the Department cannot determine Medi-Cal eligibility throughout a person's life expectancy, state whether Medi-Cal will exist in the future or state what benefits will be available to Medi-Cal beneficiaries in the future. The Department similarly seeks judicial notice or presents as additional evidence, its official records showing the amount of attendant care Ashlynn requires and its payment for these services. These requests are denied as the materials were not before the trial court and are not relevant to our resolution of this appeal.

In summary, this matter is remanded to the trial court with directions to (1) conduct further proceedings regarding whether the cost of Ashlynn's future attendant care and medical care should be included in its *Ahlborn* calculation, and (2) apply section 14124.72(d) to determine the Department's share of Ashlynn's attorney fees and costs.

19

DISPOSITION

The order is reversed and the matter is remanded to the trial court for further proceedings in accordance with this opinion. In the interest of justice, each party will bear their own costs on appeal.

McINTYRE, J.

WE CONCUR:

HALLER, Acting P. J.

AARON, J.