Filed 5/16/23  Davis v. Regents of the Univ. of Cal. CA2/3

**NOT TO BE PUBLISHED IN THE OFFICIAL REPORTS**

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(a). This opinion has not been certified for publication or ordered published for purposes of rule 8.1115(a).

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

SECOND APPELLATE DISTRICT

DIVISION THREE

| | |
|---|---|
| JASON CRAIG DAVIS, an Incompetent Person, etc., | B310313 |
| Plaintiff and Respondent, | Los Angeles County Super. Ct. No. BC528870 |
| v. | |
| REGENTS OF THE UNIVERSITY OF CALIFORNIA, | |
| Defendant; | |
| STATE DEPARTMENT OF HEALTH CARE SERVICES, | |
| Claimant and Appellant. | |

APPEALS from orders of the Superior Court of Los Angeles County, Ralph C. Hofer, Judge. Reversed and remanded.

Rob Bonta, Attorney General, Cheryl L. Feiner, Assistant Attorney General, Richard T. Waldow and Gregory D. Brown,

Supervising Deputy Attorneys General, and Kenneth K. Wang, Deputy Attorney General, for Claimant and Appellant.

Law Offices of Marilyn M. Smith and Marilyn M. Smith for Plaintiff and Respondent.

Pollak, Vida & Barer, Daniel P. Barer and Anna L. Birenbaum as Amicus Curiae on behalf of Defendant The Regents of the University of California.

---

## INTRODUCTION

Plaintiff and respondent Jason Craig Davis (plaintiff) suffered catastrophic physical injuries after falling from a freeway overpass. Appellant, the California Department of Health Care Services (Department), through the Medi-Cal program, funded plaintiff's medical care following the accident and expects to do so for the foreseeable future. Plaintiff initiated the present suit again his psychiatrist and a psychiatric hospital alleging, among other things, that their negligence caused or contributed to the accident. They settled and the Department asserted reimbursement liens against plaintiff's settlement proceeds.

The issue before us relates to the method a trial court should use to calculate the allowable amount of such a lien when the injured-party plaintiff is expected to receive virtually all future medical care through the Medi-Cal program. As we explain, the trial court erred by failing to apply the methodology adopted in *Aguilera v. Loma Linda University Medical Center* (2015) 235 Cal.App.4th 821 (*Aguilera*). We therefore reverse and remand for further proceedings.

## BACKGROUND: MEDI-CAL LIENS

We recently explained the intricacies of Medicaid, a federal program that funds, together with money from participating states, medical care for low-income individuals. (See *Daniel C. v. White Memorial Medical Center* (2022) 83 Cal.App.5th 789 (*Daniel C.*).) California's implementation of the Medicaid program, known as Medi-Cal, is administered by the Department. Under both federal and state law, the Department is generally prohibited from seeking reimbursement for services provided to Medi-Cal beneficiaries unless the services were related to an injury caused by a third-party tortfeasor. In that event, the Department is required to seek reimbursement for its services from the third-party tortfeasor by filing a lawsuit against it, by intervening in a Medi-Cal beneficiary's lawsuit against it, or, as here, by filing a lien against judgment or settlement proceeds obtained by the Medi-Cal beneficiary. (See generally *id.*, at p. 800.)

As we will explain, the Department asserted liens against settlement proceeds recovered by plaintiff from two third-party tortfeasors. The trial court was required to determine the permissible amount of the liens under Welfare and Institutions Code[1] sections 14124.72, 14124.76, 14124.78, and 14124.785. The focus of the present appeal relates to section 14124.76, subdivision (a), which states: "No settlement, judgment, or award in any action or claim by a beneficiary to recover damages for injuries, where the director has an interest, shall be deemed final or satisfied without first giving the director notice and a

---

[1] All undesignated statutory references are to the Welfare and Institutions Code.

reasonable opportunity to perfect and to satisfy the director's lien. Recovery of the director's lien from an injured beneficiary's action or claim is limited to that portion of a settlement, judgment, or award that represents payment for medical expenses, or medical care, provided on behalf of the beneficiary. All reasonable efforts shall be made to obtain the director's advance agreement to a determination as to what portion of a settlement, judgment, or award … represents payment for medical expenses, or medical care, provided [on] behalf [of] the beneficiary. Absent the director's advance agreement as to what portion of a settlement, judgment, or award represents payment for medical expenses, or medical care, provided on behalf of the beneficiary, the matter shall be submitted to a court for decision. Either the director or the beneficiary may seek resolution of the dispute by filing a motion, which shall be subject to regular law and motion procedures. In determining what portion of a settlement, judgment, or award represents payment for medical expenses, or medical care, provided on behalf of the beneficiary and as to what the appropriate reimbursement amount to the director should be, the court shall be guided by the United States Supreme Court decision in *Arkansas Department of Health and Human Services v. Ahlborn* (2006) 547 U.S. 268 [(*Ahlborn*)] and other relevant statutory and case law." (Italics added.)

California courts have interpreted *Ahlborn* to mean that the Department may only assert a lien against the portion of judgment or settlement proceeds that represents compensation for past medical expenses. (*Daniel C., supra*, 83 Cal.App.5th at pp. 806–807.) In addition, if the parties cannot agree on an allocation of funds as between past medical expenses and other elements of a plaintiff's recovery, we have said that the formula

4

used by the parties in *Ahlborn* is a rational method to determine such allocation. (*Id.*, at p. 807.) That formula, to which the parties in *Ahlborn* stipulated, is the ratio of the plaintiff's actual recovery to the total value of the plaintiff's claim, which ratio is applied to any liens asserted by the Department. (*Ibid.*) For example, if a plaintiff values a claim at $10 million and settles for $1 million, the plaintiff has recovered 10 percent of the value of the claim and the Department will be reimbursed 10 percent of the value of medical services provided to the plaintiff.

## FACTS AND PROCEDURAL BACKGROUND

### 1. Background

Plaintiff sustained catastrophic injuries after falling from a freeway overpass, including traumatic brain injury, paralysis of his upper right side, and aphasia. His injuries are permanent and unlikely to improve. He is non-verbal, subject to violent outbursts, and requires round-the-clock attendant care. In the operative complaint, plaintiff alleged that his fall resulted from the negligence of third parties including his treating psychiatrist, Dr. Jeffrey Becker, and a hospital operated by the University of California Board of Regents (the Regents).

### 2. Becker Settlement

#### 2.1. Approval of the Settlement and Payment to the Department

Plaintiff settled his claim against Dr. Becker for $1 million. As of the date of the Becker settlement, the Department had already spent more than $1 million to provide plaintiff's medical care. In December 2019, the court approved the Becker settlement and allocated $376,201 to satisfy the Department's

5

lien against the settlement proceeds. After accounting for the Department's lien, other medical expenses, attorney's fees, and litigation costs, the remaining settlement proceeds of $221,240 were distributed to a special needs trust for plaintiff's benefit.

### 2.2. Plaintiff's Motion for Reimbursement from the Department

In September 2020, plaintiff filed a motion seeking reimbursement of a portion of the funds paid to the Department from the proceeds of the Becker settlement. Plaintiff represented, and the Department did not contest, that the total value of his case was $14 million and therefore the $1 million settlement represented a 7 percent recovery for plaintiff. Plaintiff asserted, therefore, that under section 14124.76, the Department was only entitled to recover 7 percent of its expenditures for plaintiff's past medical care, less the Department's share of attorney's fees and litigation costs, i.e., $52,500. Accordingly, plaintiff requested reimbursement of $323,701 from the Department.

The Department opposed the motion and argued mainly that the amount of its lien should be calculated under section 14124.78[2] rather than section 14124.76. Specifically, the Department argued that section 14124.76 should not be applied because the present case is distinguishable from *Ahlborn*. In the

---

[2] Section 14124.78 provides, "Notwithstanding any other provision of law, in no event shall the director recover more than the beneficiary recovers after deducting, from the settlement judgment, or award, attorney's fees and litigation costs paid for by the beneficiary. If the director's recovery is determined under this section, the reductions in subdivision (d) of Section 14124.72 shall not apply." According to the Department, it was permitted to recover $373,720.50 under this section.

alternative, the Department argued that if the court applied section 14124.76, it should follow *Aguilera, supra,* 235 Cal.App.4th 821. There, the Court of Appeal held that if it is reasonably probable the Department will pay for a plaintiff's future medical care under the Medi-Cal program, then the value of that future medical care should be subtracted from the case value used to determine the percentage of the plaintiff's recovery.[3] (*Id.* at p. 833.) The Department submitted five declarations by staff members attesting to plaintiff's medical condition, his likely future care needs, care covered under the Medi-Cal program, and plaintiff's future eligibility for Medi-Cal, suggesting generally that plaintiff will more than likely receive from Medi-Cal nearly all of the care included in his $14 million life care plan. Following *Aguilera*, the Department asserted, would yield a recovery much higher than the $373,720.50 purportedly available under section 14124.78.

In reply, plaintiff asserted that the declarations submitted by the Department were speculative. Plaintiff also suggested that the Department was impermissibly attempting to recover payment for the cost of his future medical care.

---

[3] Calculating the recovery ratio in this manner may make a huge difference. Assume a plaintiff recovers $1 million in settlement proceeds and the total case value is $14 million. Including the cost of future medical care in the total case value yields a recovery ratio of 7 percent. But if the Department could establish that $12 million of the $14 million case value relates to future medical care Medi-Cal is reasonably likely to provide, the recovery ratio would be 50 percent ($1 million settlement divided by $2 million reduced case value.)

### 2.3. Ruling and Appeal

The court granted plaintiff's motion, accepted plaintiff's calculations, and ordered the Department to reimburse plaintiff the requested $323,701. The court declined to follow *Aguilera*, citing Congressional modifications to the Medicaid statute after *Aguilera* was decided and stating "[i]t would appear that the effort to exceed the lien recognized in *Ahlborn* by means of discounting … future medical expenses is not appropriate." The court also noted that section 14009.5, which had been recently amended, limited the Department's right of reimbursement to the probate estate of a Medi-Cal beneficiary.

The Department timely appeals.

## 3. The Regents Settlement

### 3.1. Settlement

Plaintiff settled his claim with the Regents for $500,000. The Department asserted that it had paid $638,022.50 for plaintiff's medical care after the Becker settlement and asserted a lien against the settlement proceeds.

### 3.2. Motion for Lien Determination

Plaintiff brought a motion to determine the amount of the Department's lien against the settlement proceeds. Citing section 14124.76, plaintiff asserted that the Department could only recover $14,235.74. To reach that figure, plaintiff applied the *Alhborn* formula and asserted that the $500,000 settlement represented 3.5 percent recovery on his $14 million case. Plaintiff applied that percentage to the Department's $638,000 lien ($22,330) and subtracted the Department's statutory share of fees ($5,582.50) and costs ($2,511.76).

In opposition, the Department again argued that the amount of its lien should be calculated under section 14124.78 rather than section 14124.76. According to the Department, it was allowed to recover $214,117.72 under section 14124.78. The Department asserted that section 14124.76 should not be applied because the present case is distinguishable from *Ahlborn*. In the alternative, the Department again urged that if the court applied section 14124.76, it should follow *Aguilera, supra,* 235 Cal.App.4th 821, and exclude almost all of plaintiff's future medical care from the total value of the case when calculating the recovery ratio. As it did previously, the Department submitted five declarations by staff members attesting generally that plaintiff would receive nearly all of the care included in his $14 million life care plan through the Medi-Cal program. Following *Aguilera*, the Department asserted, would yield a recovery much higher than the $214,117.72 available under section 14124.78.

### 3.3.   Ruling and Appeal

The court granted plaintiff's motion regarding the Department's lien, thereby limiting the lien to $14,235.74. As in its prior ruling, the court declined to follow *Aguilera*, stating that "[i]t would appear that the effort to exceed the lien recognized in *Ahlborn* by means of discounting … future medical expenses is not appropriate." In support of its conclusion, the court cited the same Congressional and legislative authority as in its prior ruling.

The Department timely appeals.

At the Department's request, which was unopposed, we consolidated the two appeals for all purposes.

## DISCUSSION

### 1. Standard of Review

Reimbursement of a Medi-Cal lien in a third-party suit is mandatory. (See *McMillian v. Stroud* (2008) 166 Cal.App.4th 692, 699.) Accordingly, "we review the trial court's resolution of questions of law de novo [citation], and otherwise examine the record for substantial evidence to support its factual determinations [citation]." (*Ibid.*)

### 2. The trial court erred by refusing to follow *Aguilera*.

The Department contends the court erred in calculating the allowable amount of its lien under section 14124.76. Specifically, the Department argues the court should have determined the plaintiff's ratio of recovery—particularly the value of plaintiff's case—using the method approved by the Court of Appeal in *Aguilera, supra*, 235 Cal.App.4th 821. We agree.

#### 2.1. The Medi-Cal Program

We have addressed the relevant statutory schemes at issue in two recent cases, *Daniel C., supra*, 83 Cal.App.5th 789 and *L.Q. v. California Hospital Medical Center* (2021) 69 Cal.App.5th 1026 (*L.Q.*). We incorporate our opinions by reference and include only a brief summary of the points relevant to our analysis in the present case.

"In 1965, Congress created the federal Medicaid program by enacting Title XIX of the Social Security Act (42 U.S.C. § 1396 et seq.). Medicaid is a medical assistance program for low-income individuals that is jointly funded by the federal and state governments. States' participation in the Medicaid program is optional; however, any state that chooses to participate must

develop and implement a state plan that conforms to federal law. (*Harris v. McRae* (1980) 448 U.S. 297, 301.)

"California has elected to participate in Medicaid by establishing the Medi-Cal program. California's implementing legislation, known as the Medi-Cal Act, is codified at section 14000 et seq. (See § 14000.4 [short title].) [The Department] is the state agency charged with administering the Medi-Cal program. … A final determination of rights and obligations with respect to a Medi-Cal lien is appealable pursuant to section 14124.76, subdivision (c)." (*Daniel C., supra*, 83 Cal.App.5th at pp. 800–801.)

### 2.2. Medi-Cal Liens and Third-Party Tortfeasors

Federal law generally prohibits states from seeking reimbursement for services provided under state Medicaid programs from Medicaid beneficiaries. "The [Medicaid] Act[, 42 U.S.C. § 1396 et seq.] includes provisions that prohibit states from recovering funds paid on behalf of Medicaid beneficiaries from the beneficiaries themselves. One such provision—the 'anti-lien' provision—says that, except in circumstances not relevant here, '[n]o lien may be imposed against the property of any individual prior to his death on account of medical assistance paid or to be paid on his behalf under the State plan.' (42 U.S.C. § 1396p(a)(1).) Another such provision—the 'anti-recovery' provision—says that '[n]o adjustment or recovery of any medical assistance correctly paid on behalf of an individual under the State plan may be made, except that the State shall seek adjustment or recovery of any medical assistance correctly paid on behalf of an individual under the State plan in [circumstances not present here].' (42 U.S.C. § 1396p(b)(1).)" (*Daniel C., supra*, 83 Cal.App.5th at p. 802.)

11

We have also explained one common exception to this general rule. As required under federal law, "[t]he Medi-Cal Act [§ 14124.70 et. seq.] states that when benefits are provided to a Medi-Cal beneficiary because of an injury for which a third party or carrier is liable, [the Department] has the right to recover from such party or carrier the reasonable value of the Medi-Cal benefits. (§ 14124.71, subd. (a).) [The Department] may obtain reimbursement by filing an action directly against a third party tortfeasor, by intervening in a Medi-Cal beneficiary's action against a third party, or by filing a lien against a beneficiary's settlement, judgment, or award. (§§ 14124.71, 14124.72, 14124.73; [citations].)"[4] (*Daniel C., supra*, 83 Cal.App.5th at p. 800.)

The Medi-Cal Act limits the amount of a Department lien against settlement proceeds in cases involving recovery from third-party tortfeasors. Section 14124.78 reflects the federal "anti-lien" directive and restricts the Department's recovery to the proceeds of settlement after attorney's fees and litigation costs have been paid. In other words, even if the Department's lien is not fully satisfied from the settlement proceeds, the Department may not recover the balance of its lien directly from the Medi-Cal beneficiary. (See *Bolanos v. Superior Court* (2008) 169 Cal.App.4th 744, 757 (*Bolanos*) [noting that "section 14124.78 imposes a single, absolute limitation on the director's recovery

---

[4] The applicable statutes apply to proceeds from a judgment, a settlement, or an arbitration award. For convenience, we will refer only to settlement proceeds in the discussion that follows.

that precludes the reimbursement of medical expenses from the beneficiary's own resources"].)[5]

Section 14124.72 applies when the beneficiary rather than the Department pursues a claim against the third-party tortfeasor. If the Department files a lien in an action pursued by a beneficiary alone, its claim for reimbursement is reduced by 25 percent, representing its share of attorney fees, as well as by its statutory share of litigation costs. (§ 14124.72, subd. (d).)

Section 14124.76, the section at issue in the present appeal, limits the Department's recovery to that portion of settlement proceeds that compensates the beneficiary for past medical expenses. (§ 14124.76, subd. (a).) The Legislature revised this section following the United States Supreme Court's decision in *Ahlborn*. (See *Daniel C., supra*, 83 Cal.App.5th at p. 806.) There, stated very simply, the court held that the Medicaid Act limits a state's ability to recover on a reimbursement lien to the portion of

---

[5] In the calculations presented to the trial court, the Department appears to apply the previous version of section 14124.78, which provided, "Except as otherwise provided in this article, notwithstanding any other provision of law, the entire amount of any settlement of the injured beneficiary's action or claim, with or without suit, is subject to the director's claim for reimbursement of the reasonable value of benefits provided and any lien filed pursuant thereto, but in no event shall the director's claim exceed one-half of the beneficiary's recovery after deducting for attorney's fees, litigation costs, and medical expenses relating to the injury paid for by the beneficiary." Following the *Ahlborn* decision, the legislature modified the statute and eliminated the language restricting the state's recovery to one-half of the overall recovery. (See *Bolanos, supra*, 169 Cal.App.4th at p. 757 ["Section 14124.78 was amended to delete therefrom the limitation that the director's claim could not exceed one-half of the beneficiary's recovery."].)

13

the beneficiary's recovery from a third-party tortfeasor that compensates for medical expenses. (*Ahlborn, supra,* 547 U.S. 268, 280.) Other portions of the recovery (such as pain and suffering, lost wages, or lost earning capacity), the Court held, are the beneficiary's property and are therefore protected under the "anti-lien" provisions of the Medicaid Act. (*Id.* at pp. 284–285.) The parties in *Ahlborn* had stipulated that the state would be reimbursed at the same percentage as plaintiff's recovery. Because plaintiff recovered approximately one-sixth of the value of her claim, the Court held that the state's recovery was consequently limited to that same percentage of its lien. (*Id.* at p. 274.)

California courts applying section 14124.76 have held that the Department may only recover from the portion of settlement proceeds representing compensation for *past* medical expenses. (See *Bolanos, supra*, 169 Cal.App.4th at p. 748 [describing the secondary holding of *Ahlborn* as "when the settlement, judgment or award does not specify what portion thereof was for past medical expenses, an allocation must be made in the settlement, judgment or award that indicates what portion is for past medical expenses as distinct from other damages. The [state's] recovery is limited to that portion of the settlement that is allocated to past medical expenses."].)

Finally, section 14124.785 provides that the allowable amount of the Department's lien is the lesser of the three amounts reached under sections 14124.72, 14124.76, and 14124.78.

### 2.3. Aguilera's Approach

In *Aguilera*, the Court of Appeal confronted the issue presented here, namely, how to apply the *Alhborn* formula where

14

Medi-Cal expects to provide all, or nearly all, of a plaintiff's future medical care. (See also *Daniel C., supra*, 83 Cal.App.5th at pp. 809–810.) More particularly, the court considered whether a plaintiff's recovery ratio should be calculated using the total value of a plaintiff's case, including the cost of future medical care that is expected to be provided by Medi-Cal. There, the plaintiff had settled a medical negligence action against her physician for $950,000. (*Aguilera, supra*, 235 Cal.App.4th at p. 825.) The Department asserted a lien on the plaintiff's recovery based on the roughly $200,000 it had spent on her behalf. (*Ibid.*) The plaintiff filed a motion to determine the Department's lien, claiming that the full value of her claim was nearly $15 million, and thus that her settlement was only about 6 percent of her total damages. She asserted that the Department's recovery therefore should be limited to about $10,000, or approximately 6 percent of its lien claim, based on the *Ahlborn* formula. (*Id.* at p. 826.) The Department disagreed, asserting that it would be paying the plaintiff's future medical expenses, and thus those expenses should be excluded from the calculation. The trial court excluded the plaintiff's future medical expenses from its determination of the plaintiff's future expected damages, but not her future attendant care expenses, and awarded the Department a lien of about $15,000. The Department appealed. (*Id.* at p. 826.)

The Court of Appeal reversed, agreeing "in theory" with the Department's contention that future health care expenses which would be paid by Medi-Cal should be excluded from the *Ahlborn* formula if the "the Department present[s] sufficient evidence that it will in fact pay [the plaintiff's] expenses as long as she qualifies for the benefits that she is presently receiving." (*Aguilera, supra*,

15

235 Cal.App.4th at pp. 831–832.) On the record before it, the court concluded that the Department had failed to present such evidence and it remanded the matter for further proceedings to allow the Department to do so. (*Id.* at p. 833.) The court instructed the trial court to receive additional evidence from both parties on the issue and then "make a determination whether it is reasonably probable the Department will pay [the plaintiff's] future health care expenses. If the trial court makes such a finding, it is directed to exclude these expenses from its *Ahlborn* calculation." (*Ibid*; see also *Daniel C., supra*, 83 Cal.App.5th at pp. 812–813.)

### 2.4. Analysis

*Aguilera* is controlling. Here, as there, plaintiff settled a high-value professional negligence case for pennies on the dollar and asserted that under section 14124.76, the Department should recover the same small fraction of its lien. As noted, *ante*, plaintiff used a total case value of $14 million to calculate his recovery ratio using the *Ahlborn* formula and represented that he recovered 7 percent with regard to the Becker settlement and 3.5 percent with regard to the Regents settlement. But as in *Aguilera*, the Department asserted that it would provide nearly all the future medical care set forth in plaintiff's life care plan and it submitted evidence, in the form of five declarations, to support its contention. On that basis, the Department argued that the recovery ratio was much higher than plaintiff's asserted percentages, which would result in a much greater recovery on the Department's liens. The court did not consider this evidence, however, as it declined to apply *Aguilera*. It erred in doing so.

"Under the doctrine of stare decisis, all tribunals exercising inferior jurisdiction are required to follow decisions of courts

16

exercising superior jurisdiction. Otherwise, the doctrine of stare decisis makes no sense. The decisions of [the Supreme Court] are binding upon and must be followed by all the state courts of California. Decisions of every division of the District Courts of Appeal are binding upon … all the superior courts of this state, and this is so whether or not the superior court is acting as a trial or appellate court. Courts exercising inferior jurisdiction must accept the law declared by courts of superior jurisdiction. It is not their function to attempt to overrule decisions of a higher court. [Citations.]" (*Auto Equity Sales, Inc. v. Superior Court* (1962) 57 Cal.2d 450, 455; *People v. Perez* (2020) 9 Cal.5th 1, 13.) This is not a case in which the courts of appeal have disagreed, and the trial court had the discretion to choose between several permissible approaches. (*Auto Equity Sales,* at p. 456 ["Of course, [stare decisis] has no application where there is more than one appellate court decision, and such appellate decisions are in conflict. In such a situation, the court exercising inferior jurisdiction can and must make a choice between the conflicting decisions."].) *Aguilera* has not been called into question. Therefore, the trial court was required to follow it.

In any event, the trial court's reasons for declining to follow *Aguilera* are not persuasive. The court's first concern is set forth in the following passage: "Plaintiff argues in reply that to the extent the court in *Aguilera* considered exclusion of future health care benefits in applying the *Ahlborn* analysis, and legislation in 2013 included language overturning *Ahlborn* with respect to the assertion of a lien for full benefits, a federal statute passed in 2018, after the decision in *Aguilera* in 2015, repealed the scope of state [M]edicaid lien expansion, and effectively reinstated *Ahlborn*, and limits recovery under such liens for both [M]edicaid

17

and [M]edicare." We recently explained the impact of the Federal legislation to which the court referred. "The plain language of the amendments suggests that Congress acted in 2013 to legislatively overrule *Ahlborn* by allowing states to place liens on Medicaid recipients' *entire* third party recoveries, rather than on only the portion of such recoveries attributable to past health care. By repealing these amendments, Congress restored the post-*Ahlborn* status quo—that is, it prohibited states from placing liens on any portion of a beneficiary's third party recovery not attributable to past health care." (*L.Q., supra*, 69 Cal.App.5th at p. 1048.)

*Aguilera* does not suggest that *Ahlborn* had been effectively overruled by federal legislation enacted in 2013 which was, in any event, not yet in effect. Indeed, *Aguilera* makes no reference to that legislation. Moreover, if *Aguilera* had been influenced by the 2013 federal legislation cited by the court, the Court of Appeal would have, at a minimum, questioned whether *Ahlborn* was still good law. It did not. *Aguilera* applied the *Ahlborn* formula as interpreted by California courts both before and after the Congressional amendments. The amendments cited by the court are therefore irrelevant here.

The court also noted, "Plaintiff also relies on … section 14009.5, enacted after *Aguilera* was decided, which now limits Medicare's recovery of reimbursement for its services to a probate estate. The argument is then that [the Department] should not be entitled to recover more from a beneficiary who settles a claim, [than] it would otherwise be entitled to upon death." As the Department notes, section 14009.5 relates to the state's right of recovery from a Medi-Cal beneficiary after the beneficiary's death. Accordingly, it is not applicable in the present case, a point plaintiff concedes. The state's right to recovery from a Medi-

Cal beneficiary during the beneficiary's lifetime is, as we have said, severely restricted under both federal and state law. We are concerned here with the exception relating to the state's ability to obtain reimbursement for its services from a beneficiary's settlement proceeds while the beneficiary is still alive, a matter governed by section 14124.70 et seq., not section 14009.5.

In sum, in calculating the Department's liens under section 14124.76, the court was required to consider the evidence offered by the Department to establish that it was reasonably probable that plaintiff would receive the vast majority of his future care through Medi-Cal. On remand, the court shall consider that evidence and determine, in the first instance, whether the Department has cleared the threshold set in *Aguilera*. If it determines the Department has done so, the court shall reduce the total value of plaintiff's case as appropriate, calculate the plaintiff's recovery ratio under the *Ahlborn* formula, and determine the amounts of the Department's liens under section 14124.76. The lien amounts shall be further reduced to account for attorney's fees and litigation costs pursuant to section 14124.72. (See *Aguilera, supra*, 235 Cal.App.4th at pp. 833–835.)

## DISPOSITION

The orders are reversed. The trial court is directed to recalculate the permissible amount of the Department's liens under section 14124.76 consistent with this opinion and then determine the final amount of the Department's liens under section 14124.785. In the interests of justice, the parties shall bear their own costs on appeal.

## NOT TO BE PUBLISHED IN THE OFFICIAL REPORTS

LAVIN, J.

WE CONCUR:

EDMON, P. J.

BENKE, J.*

---

* Retired Associate Justice of the Fourth District Court of Appeal, assigned by the Chief Justice pursuant to article VI, section 6 of the California Constitution.